# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC WAREHOUSING COMPANY K.S.C.,** | : |
| | : |
| | : |
| v. | : **CIVIL ACTION NO. 1:07cv502 (JDB)** |
| | : |
| **DEFENSE SUPPLY CENTER PHILADELPHIA, THE DEFENSE LOGISTICS AGENCY, and THE DEPARTMENT OF DEFENSE.** | : |
| | : |
| | : |
| | : |

## DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S APPLICATION FOR PERMANENT INJUNCTION

Defendants Defense Supply Center ("DSCP"), Defense Logistics Agency ("DLA"), and the United States Department of Defense ("DoD") (collectively, "Defendants"), through counsel, hereby move to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. In support of this motion and opposition, Defendants respectfully refer the Court to the attached memorandum of points and authorities.

Because Defendants' motion is a dispositive motion, Defendants' counsel have not consulted with Plaintiff's counsel concerning the relief requested. *See* LCvR 7(m).

Respectfully submitted,

____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
QUAN K. LUONG

Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC WAREHOUSING COMPANY K.S.C.,** | : |
| | : |
| v. | : **CIVIL ACTION NO. 1:07cv502 (JDB)** |
| | : |
| **DEFENSE SUPPLY CENTER PHILADELPHIA, THE DEFENSE LOGISTICS AGENCY, and THE DEPARTMENT OF DEFENSE.** | : |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S APPLICATION FOR PERMANENT INJUNCTION

### INTRODUCTION

Plaintiff Public Warehousing Company K.S.C. ("PWC" or "Plaintiff"), a United States government contractor and a Subsistence Prime Vendor for the Defense Supply Center Philadelphia ("DSCP"), the Defense Logistics Agency ("DLA"), and the U.S. Department of Defense ("DoD") (collectively, "Defendants"), brings this complaint for declaratory and injunctive relief alleging that DSCP's refusal to provide performance evaluations of PWC's performance under past and on-going government contracts with DSCP is a violation of the Federal Acquisition Regulations ("FAR") and the Fifth Amendment of the United States Constitution.  Plaintiff alleges "that DSCP's conduct has the effect of depriving PWC of the ability to fairly compete for government contracts…"  *Compl. Memo at p. 19.*

The Court of Federal Claims enjoys exclusive subject matter jurisdiction over all government contract procurement protests.  Plaintiff also lacks standing to bring the instant complaint.  Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claim, and should dismiss Plaintiff's case outright.  Even assuming jurisdiction, Plaintiff fails to state a

claim because 48 C.F.R. §§ 42.1502 and 42.1503 do not create a right enforceable by government contractors.

## BACKGROUND

The Defense Logistics Agency ("DLA") is an agency of the Department of Defense ("DoD") that provides supply, technical, and logistical support to the military services.  The Defense Supply Center Philadelphia ("DSCP") is a branch of the DLA and is primarily responsible for purchasing subsistence, textile products, and medical items for the DoD.  PWC is a government contractor and a Subsistence Prime Vendor for DSCP.  To date, PWC and DSCP have entered into three Prime Vendor contracts in which PWC provides food and other supplies to the dining facilities of the United States military in the Middle East:  (1) SPM300-05-D-3061 ("PV1"); (2) SPM300–05-3119 ("PV Bridge"); and (3) SPM300-06-D-3128 ("PV2").  In 2003, PWC and DSCP executed PV1, which expired on February 15, 2005.  DSCP has already completed a performance evaluation on PV1.  On or around February 16, 2005, the Parties executed PV Bridge, which expired on December 4, 2005, and PV2.  DSCP is currently preparing the performance evaluation for PV Bridge and expects to complete that shortly.  *Attachment 1 – Declaration of Linda Ford*.[1]  PV2 is an ongoing contract for services between the Parties.[2]

---

[1] Defendants will supplement this motion as soon as the performance evaluation has been completed.  Defendants anticipate that this will be done by no later than the due date for submission of Plaintiff's opposition.

[2] This background is largely based upon information and allegations reflected in the Plaintiff's complaint and does not purport to be a complete recitation of the pertinent facts. Defendant also advises that Plaintiff's characterizations of the Department of Justice's investigation into PWC may not be entirely accurate.

**STANDARD OF REVIEW**

**I.    Applicable Law for Injunctive Relief.**

In determining whether to enter a permanent injunction, the Court considers a modified

iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits;

(2) whether the plaintiffs will suffer irreparable injury absent an injunction; (3) whether,

balancing the hardships, there is harm to defendants or other interested parties; and (4) whether

the public interest favors granting the injunction.  *See National Ass'n of Psychiatric Health*

*Systems, et al. v. Shalala,* 120 F.Supp.2d 33, 44 (D.D.C.2000).  *See also Amoco Production Co.*

*v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ("The

standard for a preliminary injunction is essentially the same as for a permanent injunction with

the exception that the plaintiff must show a likelihood of success on the merits rather than actual

success."); *National Mining Ass'n v. U.S. Army Corps of Engineers,* 145 F.3d 1399, 1408-09

(D.C.Cir.1998) (demonstration of actual success on the merits required for permanent injunctive

relief).  The Lanham Act expressly provides that "courts vested with jurisdiction of civil actions

arising under this [Act] shall have power to grant injunctions, according to the principles of

equity and upon such terms as the court may deem reasonable, ... to prevent a violation under

subsection (a), ©, or (d) of section 1125(a) of this title." 15 U.S.C. § 1116(a).

**ARGUMENT**

**I.    Court of Federal Claims Has Exclusive Jurisdiction Over All Contract**
**        Procurement Cases**

This case must be dismissed because under the Administrative Dispute Resolution Act

("ADRA"), the Court of Federal Claims has exclusive jurisdiction over all contract procurement

cases. Thus, this Court lacks subject matter jurisdiction to decide the case.

The D.C. Circuit frequently has cautioned that "[j]urisdiction must be established before a federal court may proceed to any other question." *Galvan v. Federal Prison Indus.*, 199 F.3d 461, 463 (D.C. Cir. 1999). *Compare Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."); *Stewart v. Ashcroft*, 352 F.3d 422, 424 (D.C. Cir. 2003) (disapproving district court ruling which "assume[d] … without deciding that … the court … ha[d] jurisdiction to hear the case.'").

The United States district courts are courts of limited jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 465 U.S. 694, 701-702 (1982). They are empowered to hear only those cases that are (a) specifically authorized by the Constitution, and (b) the subject of a jurisdictional grant by Congress. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375. 377 (1994). As explained by the United States Supreme Court in *Compangnie des Bauxites*: "The character of controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." 456 U.S. at 701.

Given the federalism concerns inherent in the assertion of federal subject matter jurisdiction, there is a presumption that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983); *Mars Inc. v. Kabushiki-Kaisha Nippon Conclux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994) (ambiguities as to jurisdiction should be "resolved against the assumption of jurisdiction."). The party asserting jurisdiction has the

4

burden of demonstrating that subject matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 80 L.Ed. 1135, 56 S. Ct. 780 (1936); *Georgiades v. Martin-Trigona*, 729 F.d 831, 833 n. 4 (D.C. Cir. 1984). Jurisdictional statutes are to be construed "with precision and with fidelity to the terms by which Congress has expressed its wishes." *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968).

Jurisdictional prerequisites are of paramount importance in suits against the United States. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Waivers of sovereign immunity are to be narrowly construed in favor of the sovereign. *McMahon v. United States*, 342 U.S. 25, 27 (1951).

In 1996, Congress enacted the ADRA, Pub. L. No. 104-320, § 12, 110 Stat. 3870 (1996) (codified at 28 U.S.C. § 1491), which amended the Tucker Act to give the Court of Federal Claims jurisdiction to consider pre- and post-award procurement protests. *Novell, Inc. v. United States*, 46 Fed. Cl. 601, 605 (Fed. Cl. 2000). Previously, the Court of Federal Claims had been limited to considering procurement challenges filed before a contract was awarded. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983) (en banc). The federal district courts enjoyed broader jurisdiction under the "Scanwell doctrine," which held that the district courts could hear procurement challenges under the Administrative Procedures Act ("APA") both before and after a contract was awarded. *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 861-73 (D.C. Cir. 1970). *See also Free Air Corp. v. FCC*, 130 F.3d 447, 450

(D.C. Cir. 1997); *Int'l Eng'g Co. v. Richardson*, 512 F.2d 573, 579 (D.C. Cir. 1979).

The ADRA provides that:

> Both the Unties [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract *or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.* Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before of after the contract is awarded.

28 U.S.C. § 1491(b)(1) (emphasis added). This provision allowed both the federal district courts and the Court of Federal claims to hear "the full range of cases previously subject to review in either system." 142 Cong. Rec. S11849 (daily ed. Sept. 30, 1996) (statement of Sen. Levin).

The ADRA also included a sunset provision, however, which terminated federal district court jurisdiction over procurement protests on January 1, 2001. Pub. L. No. 104-230, § 12(d), 110 Stat. at 3875 (codified in note to 28 U.S.C. § 1491). The purpose of the sunset provision was to "channel the entirety of judicial government procurement protest jurisdiction to the Court of Federal Claims." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001). As described by Senator Cohen, who offered the sunset provision:

> [The legislation] is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protests in the Court of Federal Claims. The [legislation] would reverse the decision of the D.C. Circuit in *Scanwell* …. Providing district courts with jurisdiction to hear bid protest claims has led to forum shopping and the fragmentation of [g]overnment contract law. Consolidation of jurisdiction in the Court of Federal claims is necessary to develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum. Congress established the Claims Court – now the Court of Federal Claims – for the specific purpose of improving the areas of . . . [g]overnment contracts . . . . *Scanwell* jurisdiction frustrates this purpose and deprives litigants of the substantial experience

and expertise the Court of Federal Claims has developed in the [g]overnment contracting area.

142 Cong. Rec. S6156 (daily ed. June 12, 1996) (statement of Sen. Cohen).  The Federal Circuit in *Emery* read the ADRA and its legislative history to mean that, beginning January 1, 2001, "the Court of Federal Claims is *the only judicial forum* to bring any government contract procurement protest."  264 F.3d at 1080 (emphasis added).  *Compare Novell, Inc. v. United States*, 109 F. Supp.2d 22, 24-25 (D.D.C. 2000) ("[T]here is no longer . . . APA-based jurisdiction for the district courts in government bid protest cases; rather Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdiction language of the ADRA.") (*cited with approval* in *Emery*, 264 F.3d at 1080).

In the instant case, it is clear that Plaintiff's complaint alleges a "violation of statute or regulation in connection with a procurement or proposed procurement."[3]  As discussed in Plaintiff's own pleadings, Plaintiff is a government contractor that has entered into three Prime Vendor contracts with DSCP, two that have already been completed and one that is on-going.  *Compl. at ¶¶ 1-3*.  Plaintiff alleges that pursuant to the Federal Acquisition Regulations ("FAR") (i.e. 48  C.F.R. §§ 42.1502 - .1503), the very regulations that govern the federal procurement process, DSCP is required to evaluate Plaintiff's performance under these three contracts and to provide such evaluative information to requesting procurement agencies.  *Compl. at ¶¶ 13-15*.  In addition to PWC's three contracts with DSCP, Plaintiff also alleges that

---

[3] The Court of Federal Claims has read the term "procurement' in the ADRA as denoting "'all stages of the process of acquiring property of services, beginning with the process for determining a need for property or services and ending with the contract completion and close-out.'" *Labat-Anderson, Inc.,* 50 Fed. Cl. At 104 (*quoting* definition provided in 41 U.S.C. § 402(2) and 41 U.S.C. §2302(3)(A)).

the DSCP's refusal to provide such evaluative information is also connected to other procurement proposals.  *See fn 1*.  Specifically, Plaintiff alleges that "PWC is currently in the process of bidding on numerous U.S. government contract solicitations" and that "PWC's bid on the first of these solicitations is due on March 18."  *Compl. at pg 22-23*.  Plaintiff alleges that "DSCP's conduct has the effect of depriving PWC of the ability to fairly compete for government contracts…"  *Compl. at pg 19*.  It is also undisputed that Plaintiff alleges that DSCP's refusal to conduct and provide such evaluations constitutes a violation of the FAR.  *Id*.  Finally, the remedy that Plaintiff is seeking is, in pertinent part, an order "requiring DSCP to provide other procurement agencies with past performance evaluations and information related to PWC," so that it can be more competitive in the procurement process with these other agencies.  *Compl. at pg 11*.

Plaintiff's claims fall squarely within the ambit of the ADRA.  28 U.S.C. § 1491(b) vests exclusive jurisdiction in the Court of Federal Claims to hear "an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or proposed procurement."  Plaintiff's very own allegations make clear that it is alleging violations of the FAR in connection to both its three Prime Vendor contracts with DSCP and procurement proposals with other procurement agencies.

To the extent that Plaintiff attempts to argue that the ADRA's sunset provision was only intended to terminate federal district court jurisdiction over "bid protests," such a narrow reading has been specifically rejected by both this Court and numerous other courts that have addressed the "in connection with" clause.  As the Federal Circuit has explained:

The language of Section 1491(b) . . . does not require an objection to the actual contract

8

procurement, but only to the 'violation of a statute or regulation in connection with a procurement or a proposed procurement.' The operative phrase 'in connection with' is very sweeping in scope. *As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction.*

*Ramcor Services Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999).

In *Labat-Anderson, Inc. v. United States*, 346 F.Supp.2d 145 (D.D.C. 2004), this Court specifically rejected the Plaintiff government contractor's argument that Section 1491(b) should be read narrowly to apply only to challenges to a "bid protest" or "a solicitation by a Federal agency for bids," or "a proposed award" or "the award of a contract…" *Id. at 151.* The Court noted that "the ADRA and the sunset provision make no mention at all of 'bid protests'" and that "it strains credibility – and the plain text of the statute – to read the final, blanket clause [which states any alleged violation of statute or regulation in connection with a procurement or proposed procurement] in as cramped a manner as plaintiff suggests." *Id.* The Court also cited the Federal Circuit's decision in *Emery*, noting "that Congress' intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions." *Id. at 150* (citing *Emery* at 1079).

In sum, Plaintiff alleges a violation of regulation and law in connection with a procurement or proposed procurement. Under the Tucker Act, as amended by the ADRA, the Court of Federal Claims exercises exclusive jurisdiction over such claims. Accordingly, this Court lacks subject matter jurisdiction and must dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiff Lacks Standing

Article III of the United States Constitution confers subject matter jurisdiction on the

federal courts in "cases" arising under the Constitution or federal laws and in "controversies" between various parties, delimited by the Article. *See also* 28 U.S.C.A. § 1331 (West 1993); 28 U.S.C.A. § 1332 (West 1993 & Supp. 2006). One of the prerequisites a plaintiff must therefore meet to come within the federal courts' subject matter jurisdiction is that he present the court with a "case" or a "controversy." In order to meet the Article III case-or-controversy requirement, the plaintiff must have standing to bring the matter in dispute before the court. *See Allen v. Wright*, 468 U.S. 737, 749-51 (1984). The party seeking to invoke federal court jurisdiction bears the burden of proving standing. *Lujuan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### A.    Plaintiff's claims are moot

Mootness is a jurisdictional question, one which a federal court must resolve before assuming jurisdiction. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The central question of all mootness issues is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3 (1984). "If an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Beethoven.Com LLC v. Librarian of Congress*, 394 F.3d 939, 950 (D.C. Cir. 2005) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)). The issue of mootness depends upon whether the court can grant "any effectual relief." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

By statute, agencies must rate contractors' past performance. *See* 41 U.S.C. § 405. The Court of Federal Claims has explained that there are three such categories of past performance

information. *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 421 (Ct. Cl. 1999). The first category is agency "past performance evaluations," generated after contract performance is complete. *Id. See also* FAR § 42.1502(a). The second category is agency "interim evaluations," for contracts not fully performed. These evaluations are voluntary. *See id.* If "interim evaluations" are prepared, however, they must be shared with other agencies. *See* FAR § 42.1503©; *see also Advanced Data* at 421. The third category is "ad hoc past performance information," obtained by "affording offerors the opportunity to identify Federal, state, and local government, and private contracts performed by the offerors that were similar in nature to the contract being evaluated," thereby allowing the agency to verify offerors' past performance on those contracts. FAR § 15.608(a)(2)(ii).

In the instant case, Plaintiff acknowledges that Defendants have already completed the performance evaluation for PV1. *See Compl. Memo at fn 5 and Compl. Memo, Exhibit K.* Though the performance evaluation for the PV Bridge contract had not been completed at the time Plaintiff filed its complaint, DSCP is in the process of completing this performance evaluation and expects to have it completed shortly. *See Attachment 1, Ford Declaration.* Therefore, regardless of whether or not DSCP is mandatorily required to conduct performance evaluations for completed contracts, DSCP has done so and Plaintiff's claims regarding the performance evaluations for PV1 and PV Bridge are therefore moot.

**B.    Plaintiff cannot show harm by the failure to perform interim or ad hoc evaluations**

In order for the Plaintiff to prove standing under Article III, it must demonstrate that it has suffered an injury in-fact; that there is a causal connection between the injury and the

conduct complained of; and that it is likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision. *Id.* Injury in-fact means an invasion of a legally-

protected interest which is concrete and particularized; actual or imminent and not hypothetical.

*Id.* If the injury has not yet occurred, the injurious conduct must be "actual or imminent, not

'conjectural' or 'hypothetical.'" *Lujan* at 560 (1992). Moreover, Plaintiff must demonstrate

standing for each form of relief it is seeking, *Friends of the Earth v. Laidlaw Env't Servs.*, 528

U.S. 167, 185 (2000), and make a clear showing of standing throughout the proceedings, *see*

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir

2005) ("we put on notice all complainants whose standing is unclear that they must prove their

standing by a 'substantial probability.'") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C.

Cir. 2002)).

    As explained above, "interim" performance evaluations are voluntary. Defendants'

refusal to prepare them, therefore, does not violate the FAR.[4] Even assuming, *arguendo*, that

the FAR requires "interim" or any of the other two categories of evaluations to be prepared,

Plaintiff has not been harmed by Defendant's failure to prepare them. Mere violations of law,

even if they are true are not sufficient to establish injury in fact and so are insufficient to

establish standing. *Allen* at 754. Plaintiffs must identify a concrete injury flowing from DSCP's

alleged unlawful action under the FAR. *Valley Forge Christian College v. Americans United*

---

[4] Moreover, because the regulation does not mandate agencies to issue these interim performance evaluations, but rather affords them discretion to do so on a voluntary basis, Plaintiff cannot obtain injunctive relief under the APA as a matter of law. As the Supreme Court explained in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the APA only permits courts to compel an agency "to take a <u>discrete</u> agency action that it is <u>required to take</u>," "'without directing <u>how</u> it shall act.'" <u>Id.</u> at 64 (citation omitted).

*for Separation of Church and State,* 454 U.S. 464, 485 (1982). While Plaintiff alleges

violations of the FAR, it does not connect these alleged violations to any injury that they are

suffering or will suffer or any interest that they have.

Plaintiff alleges that Defendant has violated the FAR by refusing to provide interim and

ad hoc performance evaluations. *Compl. Memo at 14-17.* Both Title 41 and the FAR , however,

explicitly state that contractors' performance is deemed to be judged neutral in the absence of

past performance evaluations or information: "In the case of an offeror without a record of

relevant past performance or for whom information on past performance is not available, the

offeror may not be evaluated favorably or unfavorably on past performance." FAR §

15.305(a)(2)(iv), *see also Advanced Data*, 43 Fed. Cl. at 421. Thus, the lack of interim and ad

hoc performance evaluations is not an adverse information that would prevent Plaintiff from

competing for other contracts.[5]

Redressability is the third prong of Article III standing and requires a showing that the

relief sought will redress the alleged injury. *The Wilderness Society v. Norton*, at 9 (citations

omitted). Plaintiff fails to show how forcing the Defendants to perform evaluations will do

anything to redress its alleged injuries. As discussed in Plaintiff's own complaint, the

Department of Justice is currently investigating allegations of wrongdoing by PWC pursuant to

its performance under the Prime Vendor contracts with DSCP. *Compl at ¶¶ 11-12.* Thus, were

this Court to enjoin the Defendants to provide interim and ad hoc evaluations, there is no

---

[5] As discussed above, the PV Bridge performance evaluation information has now been completed and entered into the Contractor Performance Assessment Report ("CPAR") database. As Plaintiff acknowledges, performance evaluations in the CPAR database can be accessed by other procurement agencies. *See Compl. Memo at fn 5.* Thus, Plaintiff cannot allege that it is harmed by the absence of such performance information.

guarantee that the outcome will be any different, i.e., the evaluations could reflect that Plaintiff

is being investigated or other negative performance information.  Assuming, *arguendo*, that

Plaintiff had been wronged by the failure to issue interim and ad hoc evaluations, requiring the

Defendants to prepare them, therefore, is unlikely to redress Plaintiff's alleged injury.  Either the

deficiency in injury or the deficiency in remedy are fatal to Plaintiff's assertion of standing to

bring this claim.  *See Lujan*, 504 U.S. at 560-61.

## III.    Plaintiff Fails to State a Claim Because 48 C.F.R. §§ 42.1502 and 42.1503 Do Not Create a Right Enforceable By Contractors

The Federal Circuit has stated:  "In order for a private contractor to bring suit against the

Government for violation of a regulation, that regulation must exist for the benefit of the private

contractor.  If, however, the regulation exists for the benefit of the Government, then the private

contractor does not have a cause of action against the Government in the event that a contracting

officer fails to comply with the regulation."  *La Gloria Oil and Gas Co. v. U.S.* ,72 Fed. Cl. 544,

561 (Fed.Cl. 2006) (citing *Freightliner Corp. v. Caldera,* 225 F.3d 1361, 1365 (Fed.Cir. 2000)).

In order to determine whether a regulation "confers a cause of action upon the private

contractor," the court analyzes each regulation separately. *Id.*  Where the regulation "serves as

an internal operating procedure," *id.,* or is cautionary rather than prohibitive, and provides

guidance to the contracting officer, *see AT & T v. United States,* 307 F.3d 1374, 1380 (Fed.Cir.

2002), the regulation does not create a cause of action. *AT & T,* 307 F.3d at 1380; *Freightliner,*

225 F.3d at 1365; *Short Bros. v. United States,* 65 Fed.Cl. 695, 765 (2005).  *Id.*

In the instant case, assuming jurisdiction, though Plaintiff argues that it will be harmed if

DSCP does not provide performance evaluation information, it does not allege, let alone

14

demonstrate, that the cited FAR regulations exist specifically for the benefit of private

contractors.  On the contrary, an examination of the pertinent regulations supports the contrary

conclusion.

First, the pertinent language suggests that these performance evaluation requirements

serve more as an internal operating procedure to assist Government agencies in the source

selection process.  48 C.F.R. § 42.1501 states that "[p]ast performance information is relevant

information, *for future source selection purposes* . . ." (emphasis added).  48 C.F.R. §

42.1502(a) states that "interim evaluations should be prepared as specified by the agencies to

provide current information *for source selection purposes* . . ."  (emphasis added).  This

language clearly suggests that the purpose behind the regulations is to assist and benefit

Government agencies in the source selection process.  Second, these regulations are not

prohibitive in nature, but rather set forth guidance on the procedures for conducting performance

evaluations.  For example, 48 C.F.R. § 42.1500, Scope of Subpart, states that "[t]his subpart

provides polices and establishes responsibilities for *recording and maintaining* contractor

information." (emphasis added).  Also, 48 C.F.R. § 42.1502 states that "[t]he content and

format of performance evaluations shall be established in accordance with agency procedures. .

."  Finally, even ignoring the language of the regulations, it is simply illogical to conclude that

these regulations were intended for the benefit of government contractors as opposed to the

Government.  While there may be instances when a high performing contractor would benefit

from having its performance evaluated, presumably, there are also many instances when a

marginal or sub-performing contractor clearly would not benefit.  However, in every instance,

Government agencies involved in a source selection process benefit from an assessment of a

government contract offeror's past performance and thus, a more informed basis for its source selection decisions.

Because the pertinent regulations were intended for the benefit of the Government and not government contractors, Plaintiff fails to state a claim.

## CONCLUSION

Based upon the foregoing, Defendant respectfully requests that Plaintiff's complaint be dismissed for lack of subject matter jurisdiction and failure to state a claim and that Plaintiff's request for injunction be denied.

Respectfully submitted,

____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

___ /s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

DECLARATION OF LINDA FORD

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

I, Linda Ford, Contracting Officer, Directorate of Subsistence, Defense Supply Center

Philadelphia ("DSCP"), 700 Robbins Avenue, Philadelphia, Pennsylvania 19111, do

hereby solemnly affirm that the following is true and accurate.

     1.    I am one of two contracting officers currently assigned to contract number

SPM300-06-D-3128.  DSCP awarded this contract to The Public Warehousing Company

K.S.C. (PWC) on June 3, 2005, and was implemented on December 5, 2005.  Under this

contract, PWC provides full line food and non-food distribution for authorized customers

in Iraq and Kuwait.

     2.    I was the contracting officer for a follow-on contract to contract number

SPM300-05-D-3061.  DSCP awarded the follow-on contract to PWC on February 16,

2005 pursuant to 10 U.S.C. 2304(c)(2) based on unusual and compelling urgency.  This

follow-on contract is referred to as a bridge contract because it temporarily bridged the

gap between the first Iraq prime vendor contract number SPM300-05-D-3061 and the

second Iraq prime vendor contract number SPM300-06-D-3128.  Under the bridge

contract, PWC provided full line food and non-food distribution for authorized customers

in Iraq, Kuwait, Qatar and Afghanistan.  The bridge contract expired on December 4,

2005.

     3.    I am in the process of completing a PWC performance evaluation in the

Contractor Performance Assessment Reporting System (CPARS) for the bridge contract.

Further deponent saith not.

I declare pursuant to 28 USC §1746, under the penalty of perjury that the foregoing are true and correct statements.

4 APR 07
Date

LINDA FORD
Contracting Officer
Directorate of Subsistence
Defense Supply Center Philadelphia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PUBLIC WAREHOUSING COMPANY** | **:** |
| **K.S.C.,** | **:** |
| | **:** |
| **v.** | **: CIVIL ACTION NO. 1:07cv502 (JDB)** |
| | **:** |
| **DEFENSE SUPPLY CENTER** | **:** |
| **PHILADELPHIA, THE DEFENSE** | **:** |
| **LOGISTICS AGENCY, and THE** | **:** |
| **DEPARTMENT OF DEFENSE.** | **:** |

**ORDER**

UPON CONSIDERATION of the Defendants' Motion to Dismiss, the grounds stated

therefor and the entire record in this matter, it is by the Court this _____ day of _____,

2007, hereby

ORDERED that the said motion be and hereby is granted; and it is

FURTHER ORDERED that Plaintiff's Complaint shall be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE