# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC WAREHOUSING COMPANY | § | |
| K.S.C., | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:07cv502 (JDB) |
| | § | |
| DEFENSE SUPPLY CENTER | § | |
| PHILADELPHIA, THE DEFENSE | § | |
| LOGISTICS AGENCY, and THE | § | |
| DEPARTMENT OF DEFENSE. | § | |

---

## OPPOSITION OF PLAINTIFF PUBLIC WAREHOUSING COMPANY K.S.C. TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION[1]

---

## I. INTRODUCTION

In their Motion to Dismiss, Defendants (collectively "DSCP") drive to an erroneous conclusion based on a faulty premise. Acknowledging that it has violated the Federal Acquisition Regulation (the "FAR") by failing to provide past performance evaluations and information, DSCP seeks to challenge Plaintiff Public Warehousing Company K.S.C.'s ("PWC") claim on jurisdictional grounds. DSCP relies on three points: (1) it is a government contracting agency, (2) PWC is a contractor, and (3) PWC has asserted a FAR violation. DSCP therefore concludes that under the Administrative Dispute Resolution Act (the "ADRA"), the United States Court of Federal Claims, not the District Court, has jurisdiction. DSCP has ignored the fact that the ADRA applies to claims made "in connection with" bid or procurement protests, and

---

[1] After the filing deadline, DSCP filed a second consolidated Motion to Dismiss with respect to PWC's application for permanent injunction. In an attempt to abide by the Court's request that all briefs be consolidated into a single filing, PWC files this Opposition and Reply in response to DSCP's two separate motions.

PWC has made no such protest. Indeed, PWC is not able to file a bid protest against DSCP because PWC is not currently seeking a contract with DSCP – a basic requirement under the ADRA. Rather, PWC has lodged a complaint against DSCP as a *third party*, i.e., a government agency with which PWC is not engaged in the bid process. The only forum that has jurisdiction with respect to PWC's claims is the District Court. DSCP's Motion to Dismiss should, therefore, be denied.

DSCP makes several additional arguments, including that PWC's claims are moot. DSCP's mootness argument focuses on the point that DSCP has completed the required past performance evaluation on the PV Bridge contract. DSCP claims that this evaluation was completed when DSCP filed its Motion to Dismiss. (DSCP Mot. at 13 n.5.) That evaluation, however, was not completed and sent to PWC for review until after the close of business on Thursday, April 12 – that is, the night before this Opposition was due. Importantly, the fact that DSCP finally prepared the required evaluation does not render PWC's claims moot. Rather, the substance of that evaluation *bolsters* PWC's claim that DSCP's actions are constructively debarring PWC from competing for future government contracts and that DSCP has violated the Fifth Amendment by taking PWC's property right in its business without due process. The Supplement filed by DSCP on the very date PWC's Opposition was due speaks for itself.[2]

---

[2] This Supplement, Docket No. 15, includes sensitive Source Selection Information and should have been filed under seal. DSCP's failure to protect this information is a violation of FAR § 42.1503(b).

## II. ARGUMENT AND AUTHORITIES

**A.    Because This Is Not a Procurement Protest Nor a Claim In Connection With a Procurement Protest, Jurisdiction Resides With the District Court, Not the Court of Federal Claims.**

### 1.    The ADRA Applies Only to Procurement Protests Brought By an "Interested Party."

DSCP argues that this Court lacks subject matter jurisdiction to hear this case because under the ADRA, the Court of Federal Claims has exclusive jurisdiction. (DSCP Mot. at 3-4.) The basis for its argument is the fact that the ADRA vests government procurement protest jurisdiction with the Court of Federal Claims, and such procurement protests include those in which the contractor alleges any violation of a procurement-related statute or regulation. (*Id.* at 5-6.) DSCP fails to recognize that "[t]he district court retains subject matter jurisdiction over cases brought by non-bidders under 28 U.S.C. § 1331 and . . . sovereign immunity [is waived under] the Administrative Procedure Act." *City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004). DSCP's interpretation ignores both the plain language and the legislative intent of the ADRA. But "in construing a contested statute, [the Court must] start with traditional sources of statutory interpretation, including the statute's text, structure, purpose, and legislative history." *Arizona Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1288 (D.C. Cir. 2000).

### (a)    The Text of the ADRA Reveals the Statute's Inapplicability to PWC's Claim.

The text of the ADRA makes clear that it is inapplicable to PWC's claim. First, the ADRA provision at issue is appropriately titled "Jurisdiction of the United States Court of Federal Claims and the District Courts of the United States: *Bid Protests*." *See* Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12, 110 Stat 3870 (codified as amended at 28 U.S.C. § 1491 (2000) (emphasis added). Second, when the provision is read in its entirety,

it is clear that the ADRA governs disputes between a contractor and the federal agency *with which the contractor is currently seeking to contract*, not disputes with any government agency with which the contractor has past or current contracts. The ADRA provides that:

> [T]he Unite[d] States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action *by an interested party* objecting to *a solicitation by a Federal agency for bids or proposals* for a proposed contract or to *a proposed award or the award of a contract* or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*.

28 U.S.C. § 1491(b)(1) (2004) (emphasis added). Looking at this ADRA provision in its entirety, there are only two relevant parties: (1) the "interested party" (the contractor), and (2) the Federal agency *in which the aforementioned party is interested*. *See id.*; *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1083 (Fed. Cir. 2001) ("The ADRA clearly states that the Court of Federal Claims has jurisdiction over 'federal agenc[ies]' with respect to a 'proposed award or the award of a contract.'") (quoting 28 U.S.C. § 1491(b)(1)). To have standing under the ADRA, the Federal Circuit has held that a plaintiff must be an "interested party," which is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *American Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). As noted above, PWC has not filed a protest against DSCP in relation to a particular solicitation or award. The District Court, therefore, retains jurisdiction over this case.

## (b)    The Legislative History Demonstrates That the ADRA Was Intended to Be Limited To Bid Protests.

In the event the Court finds the plain language of the statute unclear, the Court should consider the legislative history of the ADRA so that it can accurately interpret the statute. "The legislative history can assist the court in identifying legislative intent where the statute is

unclear." *Bullcreek v. Nuclear Regulatory Com'n*, 359 F.3d 536, 541 (D.C. Cir. 2004) (citations omitted); *see also Arizona Pub. Serv.*, 211 F.3d at 1288 (listing legislative history as one of the traditional sources of statutory interpretation).

In enacting the ADRA, Congress intended to consolidate cases of contractors challenging contract awards under the Court of Federal Claims' jurisdiction, as demonstrated by the title Congress gave section 12 of the ADRA: "Jurisdiction of the United States Court of Federal Claims and the District Courts of the United States: *Bid Protests*." Administrative Dispute Resolution Act § 12, 110 Stat. at 3874 (emphasis added). The Congressional Record indicates that the ADRA's sunset provision was primarily aimed at eliminating the redundant bid protest jurisdiction of the district courts, which was unnecessary due to the newly supplemented bid protest jurisdiction of the Court of Federal Claims. The *American Federation* court analyzed this legislative history:

> Senator Cohen, who offered the bid protest provision at issue as an amendment to the pending ADRA legislation, described the provision as "expand[ing] the bid protest jurisdiction of the Court of Federal Claims." 142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen). He explained that, without the legislation, the court only had jurisdiction over pre-award bid protests and that the bill would give the court "both pre and post-award jurisdiction." *Id.* He noted that *Scanwell* "held that a contractor can challenge a Federal contract award in Federal district court under the [APA]," and described problems he saw with the concurrent jurisdiction of the Court of Federal Claims and district courts over bid protests. *Id.*

258 F.3d at 1300.

The purpose of the ADRA's sunset clause was to "repeal the 'district courts' *Scanwell* jurisdiction.'" *Id.* (quoting 142 Cong. Rec. S11848 (statement of Sen. Cohen)). The *American Federation* court further explained that:

> Senator Levin, who, together with Senator Grassley, had introduced the ADRA legislation, commented on the problems of concurrent jurisdiction over bid protests, and remarked that the Acquisition Law Advisory Panel had recommended that there should be only one forum for bid protests. *Id.* at S11849

(statement of Sen. Levin). He described the bid protest provision of the ADRA as "consolidat[ing] the jurisdiction of the Court of Federal Claims and the district courts," such that before the sunset provision took effect, "[e]ach court system would exercise jurisdiction over the full range of bid protest cases previously subject to review in either system." *Id.* Then, after the sunset provision took effect, "the jurisdiction of the district courts would terminate, and the Court of Federal Claims would exercise exclusive judicial jurisdiction over procurement protests." *Id.* at S11849-50.

258 F.3d at 1300.   The Joint Explanatory Statement of the Committee of Conference, in

reconciling the House and Senate versions of the Act, stated that section 12:

consolidates federal court jurisdiction for procurement protest cases in the Court of Federal Claims. . . . It is the intention of the Managers to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims.

H.R. Rep. No. 104-841, at 10 (1996).

Thus, Congress's intention in enacting this ADRA provision was to eliminate the redundant contract award protest jurisdiction between the district courts and the Court of Federal Claims.   Congress did not eliminate the district courts' jurisdiction to hear cases involving Government contractors' claims against third-party government agencies, as discussed below.

> ### 2.    PWC Is Not An "Interested Party," and Therefore the ADRA Does Not Apply.
>
> #### (a)    PWC Is Challenging the Actions of a Third Party (DSCP), Not a Party With Which PWC Is Presently "Interested" in Contracting.

As discussed above, the text of the ADRA makes clear that only "interested" parties fall within the statute's scope, yet DSCP insists that the ADRA applies to PWC's claim.   *See* 28 U.S.C. § 1491(b).   DSCP, however, ignores a crucial fact:  PWC is not challenging the actions of government agencies with which they are currently trying to contract.   PWC *is* currently pursuing contracts with government agencies *other than DSCP*.   (*See* PWC Mem. at 23-24.)   In the case at bar, PWC is not challenging any award decisions made by DSCP, nor is PWC

challenging any award decisions by any procurement agencies. For this reason, the ADRA does not apply here and the case should remain in this Court.

What PWC is challenging is the inaction of DSCP, *a third-party* with which PWC is *not* – for purposes of this action – "interested" in contracting. If the contracting agencies *to which PWC has already submitted bids* undermined the procurement process or violated a procurement process-related statute or regulation, the ADRA might apply. But PWC brings no such claim in this case. Indeed, it is noteworthy that *all* the cases to which DSCP cites for its assertion that the ADRA applies have two things in common: (1) the plaintiff is a contractor asserting a bid protest or some other challenge to the contract award process, and (2) the defendant is the contracting agency *with which the plaintiff contractor is currently bidding or is involved in the contract award process. See Emery*, 264 F.3d at 1074 (Plaintiff Emery, an air transportation provider, sued the United States Postal Service based on its contract award to FedEx); *see also RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1287 (Fed. Cir. 1999) (Plaintiff RAMCOR protested the INS's award of a contract to another contractor); *Labat-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 145-46 (D.D.C. 2004) (Plaintiff Labat, a government contractor that provides distribution services, filed suit against the Department of Defense, seeking injunctive relief that would prevent the DoD from awarding the contract in-house without a full solicitation of bids); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 23 (D.D.C. 2000) (Plaintiff Novell filed suit against the government, alleging improprieties in the evaluation and award of an e-mail contract). The commonality among these cases is no coincidence; the ADRA was intended to govern award disputes between government contractors and the agencies with which they were attempting to contract, *not* third parties.

**(b)    The ADRA Only Applies Where A Contracting Agency Is Challenged By An Actual or a Potential Bidder.**

DSCP argues that *any* violation of a regulation related to the procurement process, such as the FAR, falls within the ambit of the ADRA.  (*See* DSCP Mot. at 8-9.)  But the case law makes clear that the procurement-related statutory and regulatory violations that fall within the jurisdiction of the Court of Federal Claims are those violations committed by the *contracting agency*, *not* third parties.

While DSCP relies heavily on *Labat* to show that the ADRA does not apply only to "bid protests," DSCP ignores two distinguishing features of the case:  (1) Labat, the plaintiff was a disgruntled "interested" party in that it was seeking to renew its contract with the defendant government contracting agency; and (2) the plaintiff argued that the defendant committed numerous statutory and regulatory violations *by failing to conduct a complete solicitation process* (defendant instead hired in-house personnel to perform the desired services).  *See* 346 F. Supp. 2d at 148.  The *Labat* court held that the ADRA was applicable in this situation because:

> courts have consistently read the ADRA to encompass cases like this where the government never undertook a public competition for *the contract*—and thus there was no bid process to protest—but the challenged conduct was otherwise "*in connection with a procurement or proposed procurement*."

*Id.* at 151 (emphasis added) (citations omitted).  Thus, the *Labat* decision does not demonstrate that *any* violation of a procurement-related statute or regulation falls within the ambit of the ADRA, as DSCP argues.   Rather, *Labat* underscores the ADRA's requirement that the challenged agency conduct must be "in connection with" a specific procurement award, even if no formal bid process occurred in that case.   *See also RAMCOR Servs.*, 185 F.3d at 1288-89 (finding jurisdiction in Court of Federal Claims because plaintiff's allegations of statutory violation were made in connection with a specific procurement).

When faced with a situation where a party is challenging the procedures of an agency for which it is not an actual or potential bidder, district courts have found that such actions do not fall with the ambit of the ADRA. In *City of Albuquerque*, the city challenged the Department of Interior's procedures used in reaching a final agency decision with respect to site selection for a proposed new office building. 379 F.3d at 901. The Tenth Circuit held that even though the city was challenging the agency's procurement process, the fact that the city was not an actual or potential bidder meant that the case did not fall under the ADRA. *Id.* at 911; *see also generally Forest Serv. Employees for Envtl. Ethics v. United States Forest Serv.*, 338 F. Supp. 2d 1135, 1142-43 (D. Mont. 2004) (finding jurisdiction under the APA because the plaintiff brought a procedural rather than substantive challenge to the Government's contractor selection, and that procedural challenge did not rise to the level of a bid protest). In the case at bar, not only is PWC not an "actual or prospective bidder," but it is also not even challenging DSCP's procurement or award decision process.

Furthermore, the Court of Federal Claims has explicitly stated that challenges like PWC's do not fall under its jurisdiction. In *Medina Const., Ltd. v. United States,* the Court of Federal Claims rejected a challenge to an agency debarment, finding that as a general rule "such a challenge must be brought in District Court under the Administrative Procedures Act." 43 Fed. Cl. 537, 557 (1999) (internal quotation marks and citation omitted). In some carefully limited cases, the Court of Federal Claims has considered contractors' debarment claims so as to afford "complete relief in bid protest claims," but that court will not consider such claims where the debarment "only serves to preclude future contracts." *Id.* PWC's primary concern here is that DSCP's actions – specifically, the agency's refusal to share past performance evaluation and

information – has the effect of barring PWC from fairly competing for future contracts. This is the very type of claim that the Court of Federal Claims has stated belongs in the District Court.

###    3.    No Forum Other Than the District Court Has Jurisdiction Over PWC's Claims.

PWC would not be able to bring this case as a bid protest before either the Government Accountability Office ("GAO") or the Court of Federal Claims. The GAO is generally reserved for protest claims against "contracting agencies," and thus it is not possible to challenge a third-party agency's refusal to provide past performance information in that forum. *See Ocean Tech. Servs., Inc.*, B-288659, 2001 WL 1505946, at *3 (Nov. 27, 2001) ("Our bid protest forum is not the place for a firm to first complain of not having received an assessment, nor do we serve as a forum for a firm to dispute the substance of an agency's assessment of the firm's work."); *see also Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 729 (2004) ("any issue with the evaluation process itself is not appropriate for a bid protest, which examines whether the agency examined properly all documentation before it in making the contract award determination.").

Additionally, PWC would not be able to seek injunctive relief in the Court of Federal Claims, and it would thus be denied any meaningful remedy to the irreparable harm caused by DSCP. The Court of Federal Claims does not have general equitable jurisdiction, and therefore any claim for injunctive relief would have to be either incidental to monetary relief or pursuant to statutory authority. *See Vanalco, Inc. v. United States*, 48 Fed. Cl. 68, 74 (2000). Since neither exception applies to this action, PWC would be left without any meaningful remedy if it is forced to litigate in the Court of Federal Claims. Even assuming *arguendo* that PWC's Administrative Procedure Act ("APA") claim fell under the ADRA, PWC's Fifth Amendment due process claim, in which PWC seeks purely injunctive relief, would not fall under the jurisdiction of the Court of Federal Claims. Thus, if PWC is unable to litigate its claims in the

District Court, PWC would be left without any viable remedy. This cannot be the case; "[T]he legislative history of the Administrative Dispute Resolution Act does not lead to the conclusion that Congress intended to leave parties who were not actual or prospective bidders without a remedy." *City of Albuquerque*, 379 F.3d at 911.

    **B.**    **PWC Has Standing to Bring Its Claims Before This Court.**

DSCP also alleges that PWC lacks standing to bring this matter before the Court. (DSCP Mot. at 10.) It bases this allegation on three assertions: (1) DSCP is in the process of completing the CPAR evaluation for the PV Bridge Contract,[3] and PWC's claim is therefore moot[4]; (2) PWC has not demonstrated an injury in-fact because "the lack of interim and ad hoc performance evaluations[5] is not an adverse [evaluation] that would prevent Plaintiff from competing in other contracts"; and (3) even if DSCP were required to issue these "interim and ad hoc evaluations," such evaluations would "reflect that Plaintiff is being investigated or other

---

[3]  PWC received the CPAR evaluation for the PV Bridge Contract last evening. However, we understand that it will not be loaded onto the government database until PWC has had an opportunity to address some of the statements in that evaluation.

[4]  While DSCP includes mootness under the umbrella of standing issues, standing and mootness are two separate inquiries. "In fact, '[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years.'" *Loughlin v. United States*, 393 F.3d 155, 169 (D.C. Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 191 (2000)). In other words, "[m]ootness doctrine encompasses the circumstances that destroy the justiciability of a suit previously suitable for determination." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533 (2d ed. 1984). Therefore, PWC addresses the issues of standing and mootness separately.

[5]  DSCP repeatedly references "ad hoc evaluations" in its Motion. (*See* DSCP Mot. at 11, 13-14.) The case to which DSCP cites for this terminology, *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 421 (Ct. Cl. 1999), *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000), does refer to "ad hoc evaluations." DSCP also cites to FAR § 15.608(a)(2)(ii), a regulation which has nothing to do with "ad hoc evaluations." This FAR provision deals with a completely unrelated topic (unsolicited proposals). Further, PWC can find no reference whatsoever to the term "ad hoc evaluation" in the FAR. PWC assumes that DSCP is referring to the past performance information required under FAR § 42.1503(c).

negative performance information," and such evaluations would not redress PWC's injury. DSCP's arguments do not withstand scrutiny.

To satisfy the standing requirements of Article III, a plaintiff must show that, at the time the suit is filed:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth*, 528 U.S. at 180-81.  PWC satisfies each of these standing requirements.

### 1.    PWC Has Suffered An Injury In-Fact:  Imminent Denial of Government Contracts.

It is undisputed that DSCP refuses to provide requesting contracting agencies with past performance *information* on PWC.  (*See* Surrena E-mail dated 3/6/07 ("Surrena E-mail"), Ex. A to PWC's Mem.; *see also* DSCP Mot. at 11-13; Selected E-Mails and Corresponding Attached Surveys From Contracting Agencies received in response to Plaintiff's discovery requests, submitted as Exhibit A.)  This crucial information, which is separate and apart from the CPAR evaluations, operates as a reference for the contractor.  The FAR requires that such references be provided to agencies requesting the information to support future award decisions.  FAR § 42.1503(c).  Because government agencies are interested in the most current information about a contractor's performance, past performance information or references are oftentimes more valuable to contracting agencies than dated past performance evaluations.

PWC is currently in the process of bidding on numerous U.S. Government contract solicitations.  (*See* Switzer Decl., Ex. B to PWC Mem., ¶ 9.)  Due to DSCP's refusal to provide past performance information – including current information not contained or referenced in the formal CPAR reports – to contracting agencies requesting it, PWC faces the imminent harm of

losing numerous government contracts. (*See* Declaration of Toby Switzer, Ex. B to PWC Mem., ¶¶ 18, 20.)

In order to be granted injunctive relief, PWC's injury in-fact need only be imminent; it is not necessary for it to be actual. *Friends of the Earth*, 528 U.S. at 180-81. DSCP will continue to refuse to provide past performance information to requesting contracting agencies during the pendency of the Department of Justice's investigation. (*See* Surrena E-mail, Ex. A to PWC's Mem.) This investigation could take years to conclude.[6] Without injunctive relief, PWC stands to be unjustifiably denied numerous government contracts for years to come.

### 2. PWC's Injury In-Fact Is the Direct Result of DSCP's Failure to Provide Past Performance Information.

As mentioned above, but for DSCP's failure to provide past performance information to requesting contracting agencies, PWC would not be constructively debarred from or unjustifiably denied fair consideration for award of numerous government contracts, as is now the case. DSCP's violation of the FAR[7] – specifically, its failure to provide past performance information to requesting contracting agencies – is the direct and immediate cause of PWC's injury. That injury is the inevitable and entirely unjustified denial of numerous government contracts – contracts for which PWC is highly qualified under any objective standard and would, based on its excellent past performance, complete successfully.

---

[6]    Furthermore, the Government was not required to meet any evidentiary standard before initiating this investigation. Many Government contractors are under investigation, and there is no evidence that PWC is being treated the same as others under investigation.

[7]    DSCP misconstrues PWC's argument. In its Motion, DSCP states that "Plaintiff alleges that Defendant has violated the FAR by refusing to provide interim and ad hoc performance evaluations." (DSCP Mot. at 13.) PWC's Memorandum clearly states that DSCP's failure to provide an interim evaluation of PV2 is a violation of the APA, *not* the FAR. (*See* PWC Mem. at 14-15.) PWC recognizes that interim evaluations are not required under the FAR; rather, they are suggested. (*See id.*) PWC argues that DSCP's decision to not provide such an interim evaluation for PV2 violates the APA as it was arbitrary, capricious, and an abuse of discretion. (*See id.*)

    **3.**    **An Injunction Requiring DSCP to Provide Past Performance Information to Requesting Contracting Agencies Will Provide Redressability Because PWC Will No Longer Be Unjustifiably Denied Government Contracts.**

As discussed in PWC's Memorandum, a neutral or missing evaluation or past performance review has a greater detrimental effect than a negative evaluation or review because (1) there is no right to contest a neutral evaluation, unlike a negative evaluation, and (2) the lack of explanation for a neutral evaluation often leads contracting agencies to assume the worst regarding the contractor's performance. (*See* PWC Mem. at 12-13; *see also* Declaration of Pamela Cooper ("Cooper Decl."), Ex. H to PWC Mem., ¶¶ 10-11.) Thus, *any* evaluation would be less injurious to PWC than no evaluation. PWC has demonstrated that it faces imminent harm as a result of DSCP's actions, and this imminent harm constitutes an injury in-fact. If DSCP were ordered by the Court to provide past performance information to requesting contracting agencies, based on PWC's performance it should be entitled to a positive evaluation, even if DSCP unfairly adds a statement that PWC is under an investigation. (*See* PWC Mem. at 6.) Regardless of the favorability of the past performance information offered, PWC would no longer unjustifiably be denied government contracts because PWC would have the opportunity to contest a negative review.

    **C.**    <u>**PWC's Claims Are Not Moot.**</u>

DSCP asserts that PWC's claims are moot because (1) DSCP will soon submit or already has submitted its past performance evaluation of PV Bridge to the CPAR database, and (2) interim evaluations are voluntary and, therefore, DSCP is not required to provide them under the FAR. (DSCP Mot. at 11-13.) "A case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Cropp v. Williams,* 841 A.2d 328, 330 (D.C. 2004) (citation omitted). In other words, a case is moot "if 'there is no

reasonable expectation that the alleged violation will recur [to the complaining party] and ... interim relief or events have completely and irrevocably eradicated the effects of the violation.'" *Hardesty v. Draper,* 687 A.2d 1368, 1371 (D.C. 1997) (quoting *In re Morris,* 482 A.2d 369, 371 (D.C. 1984)).  The Supreme Court has made clear that the fact that one aspect of a lawsuit becomes moot does not automatically deprive a court of jurisdiction over remaining, live aspects of the case.  *See, e.g., Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 121-22 (1974).

DSCP has completed the past performance evaluation for the PV Bridge Contract but PWC understands that it will not be loaded the evaluation onto the government database until PWC has had an opportunity to respond to certain o fthe statements contained therein. Regardless of whether or not the PV Bridge CPAR evaluation has been completed and submitted, DSCP has refused to provide past performance *information*, or references, to requesting contracting agencies.  (*See* Surrena E-mail, Ex. A to PWC Mem.; *see also* DSCP Mot. at 11-13.)  DSCP has stated that it has refused and will refuse to provide past performance information for the duration of the Department of Justice investigation, and DSCP has admitted this failure in its Motion.  (*See* Surrena E-mail, Ex. A to PWC Mem.; DSCP Mot. at 11-14.) DSCP has recently received numerous past performance information forms from PWC or contracting agencies regarding contracts on which PWC is bidding.  (*See* Selected E-Mails and Corresponding Attached Surveys From Contracting Agencies received in response to Plaintiff's discovery requests, Ex. A.)  Contracting agencies require that these forms be filled out as part of their bidding processes.  (*See generally id.*)  DSCP has failed to respond to any of these past performance information inquiries.  (*See id.*)[8]

---

[8]  In PWC's First Set of Document Requests, DSCP was asked to provide "[a]ll documents related to Defendants' responses to [requests of contracting agencies for past performance information related to PWC, PV1, PV Bridge, or PV2].  (*See* PWC's First Set of Document Requests, submitted as Exhibit B.)  DSCP provided a small number of

DSCP's refusal to provide information about PWC's performance to other agencies, a violation of FAR Section 42.1503(c), is a direct cause of PWC's injury in-fact – the imminent harm of unjustifiably being denied fair consideration for government contracts. Additionally, DSCP failed to respond to PWC's Fifth Amendment claim that DSCP's actions effectively deprive PWC of its economic livelihood without any due process. (*See* PWC Mem. at 17-21.) These two concrete injuries, resulting from DSCP's violations of the FAR, the APA, and the Fifth Amendment of the Constitution, are "live" issues before this Court, even if DSCP files its PV Bridge CPAR evaluation.[9] Therefore, PWC's claims are not moot.

**D.    The FAR Provisions That DSCP Has Violated Create a Right That Is Enforceable By Contractors.**

DSCP also argues that PWC fails to state a claim because the FAR provisions PWC relies upon do not create a right enforceable by contractors. (DSCP Mot. at 14.) Relying on cases from the Federal Circuit, Defendants assert that a regulation does not provide a contractor with a cause of action if the regulation exists for the benefit of the Government. (*Id.*) Defendants' arguments on this point are wrong-headed for several reasons.

First, even if, *arguendo*, PWC were not able to enforce the FAR provisions on past performance evaluations, PWC has brought an additional, constitutional claim. Specifically, PWC claims that DSCP has taken its property right in operating its business without due process. (*See* PWC Mem. at 17-21.) PWC has undoubtedly stated a cognizable due process claim.

---

documents in response to this and PWC's other requests. If DSCP did in fact respond to any of these contracting agencies' requests, then DSCP was not forthright in its responses to PWC's document requests. Assuming DSCP did in fact provide all documents that were requested by PWC, it is clear that DSCP has refused to provide past performance information to requesting contracting agencies.

[9]  Moreover, as alluded to earlier, the CPAR for the PV Bridge contract contains statements that bolster PWC's assertions that it has suffered deprivation of its due process rights and has been constructively debarred.

Second, the legal proposition DSCP espouses is far more limited than DSCP suggests. The courts have made clear that "each regulation must be analyzed independently to determine whether it confers a cause of action upon the private contractor." *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000).

Only certain, limited types of regulations do not create causes of action for contractors. Contractors cannot state causes of action based on agency "internal operating procedures." In *Freightliner*, for instance, the court examined a regulation obligating a contracting officer to satisfy certain requirements before exercising an option. 225 F.3d at 1364-65. The court explained that the provision "serves as an internal operating procedure" under which the contracting officer must "document the reasons for exercising the option and the procedural steps taken." *Id.* at 1365. The contractor also claimed that the Government had violated a second regulation which addressed the inclusion of options in multi-year contracts. *Id.* at 1366. Again, the court explained that the contractor had no cause of action because the regulation at issue was "an internal operating procedure." *Id.* (also characterizing the regulation as "an in-house accounting mechanism" and "an internal bookkeeping matter"). *See also AT&T Co. v. United States*, 307 F.3d 1374, 1380 (Fed. Cir. 2002) (finding no remedy for contractor because regulations "provide only internal governmental direction"); *Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1452 (Fed. Cir. 1998) (finding no contractor cause of action based on section of accounting manual "best described as internal operating provision").

The regulations at issue here cannot be accurately described as "internal" procedures. Section 42.1503(b) of the FAR requires that the past performance evaluation "be provided to the contractor" and that the contractor be afforded an opportunity to submit comments. Clearly, FAR Sections 42.1502 and 42.1503 require that agencies directly document their external relationships with contractors, and expressly contemplate written exchanges with contractors regarding the substance of their evaluations. They are not mere internal bookkeeping requirements.

Third, and most importantly, the FAR provisions relied upon by PWC were clearly intended to benefit contractors. Even DSCP admits that "a high performing contractor would benefit from having its performance evaluated." (DSCP Mot. at 15.) Indeed, the regulations themselves spell out the intended use of past performance information: "Past performance information is relevant information, for future source selection purposes, regarding a contractor's actions under previously awarded contracts." 48 C.F.R. § 42.1501. The regulations require the Government to (1) prepare the evaluations, (2) provide them to contractors, (3) give contractors at least thirty days to submit comments, (4) provide final evaluations to contractors, and (5) share past performance information with other agencies. *Id.* §§ 42.1502 & 1503. Most notably, the regulations set out an appeal process for contractors who disagree with agency evaluations. *Id.* § 42.1503(b). These procedures are clearly designed for the benefit of contractors and would be rendered meaningless if contractors had no right to enforce them against Government agencies.

Further, as part of their evaluations of prospective offerors, government source selection officials are required to consider and evaluate the past performance of these offerors on similar projects. *See* 48 C.F.R. § 15.304(c)(3); *see also* the Federal Acquisition Streamlining Act of 1994 (the "FASA") § 1091, 10 U.S.C. 2306a(b) (2000). Past performance information is

critically important in contract award decisions.  Indeed, in virtually any procurement, past performance is one of the most highly weighted evaluation factors because it is an "indicator of an offeror's ability to perform the contract successfully."  *Id.* § 15.305(a)(2)(i). The Office of Federal Procurement Policy ("OFPP"), in its guide to agencies on collecting and using past performance information, encourages "agencies to make contractors' performance records an essential consideration in the award of all negotiated acquisitions."  In fact, the OFPP recommends that the weight assigned to past performance be at least twenty-five percent of the total evaluation score to ensure that no other non-cost factor is assigned a greater significance. *Id.*  Given the paramount importance of past performance, the FAR provisions mandating that contracting agencies prepare evaluations and share performance information deliver enormous benefits to contractors.  Indeed, the FAR includes a stated goal of "[u]sing contractors who have a track record of successful past performance" – a policy goal clearly designed to benefit successful contractors like PWC.  48 C.F.R. § 1.102(b)(1)(ii).

The FAR provisions at issue provide additional benefits to contractors – most notably, these provisions play a role in ensuring that contractors are treated fairly.  The Government has explained that one goal of the FAR is "to ensure that the Government, when contracting by negotiation, receives the best value, *while ensuring the fair treatment of offerors*."  62 Fed. Reg. 51,224, 51,224 (Sept. 30, 1997) (emphasis added).  That fair treatment includes giving contractors the opportunity to respond to adverse past performance reviews.  *Id.* at 51,225.  In addition, the Department of Defense's own guide to collecting and using past performance information states that past performance is "equally useful as a means of communication providing feedback and additional performance incentives for ongoing contracts."  Thus, another purpose of these provisions is to provide contractors with performance incentives and feedback.

In addition, while courts have rejected contractor claims based on regulations that provide only "incidental" or "peripheral" benefits to the contractor, the FAR provisions at issue here do not offer contractors only "incidental" benefits. *See Freightliner*, 225 F.3d at 1366; *Cessna Aircraft*, 126 F.3d at 1451-52. Given the weight assigned to past performance evaluations in selection decisions, it is impossible to characterize the benefit of these reviews to contractors as "incidental."

Finally, courts have signaled that the FAR provisions on past performance exist to benefit contractors. Federal courts and the Government Accountability Office ("GAO") have entertained claims by contractors that the Government violated the very FAR subpart upon which PWC relies, evidencing that the provisions therein do, in fact, create a right enforceable by contractors. *See, e.g., Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005); *see also D.F. Zee's Fire Fighter Catering*, B-280767.4, 99-2 CPD ¶ 62  (Sep. 10, 1999); *American Combustion Indus., Inc.* B-275057.2, 97-1 CPD ¶ 105 (Mar. 5, 1997) (sustaining protest where agency had violated predecessor FAR provision allowing contractor opportunity to respond to negative past performance information).

## III.  CONCLUSION

The ADRA does not apply to the case at bar. PWC is not an "interested party" with respect to DSCP, as it is not currently engaged with DSCP in the procurement or bidding process, and PWC does not bring its claims "in connection with" a specific procurement. Rather, PWC is challenging the inaction of a third party – DSCP – and the District Court retains jurisdiction over such claims. PWC has demonstrated that it faces imminent harm due to DSCP's failure to provide past performance information, and this imminent harm can only be redressed by injunctive relief. Plaintiff PWC respectfully requests that the Court deny

20

Defendants' Motion to Dismiss and grant Plaintiff's Motion for Preliminary Injunction, and any other such relief to which PWC may be entitled.

DATED:  April 13, 2007

Respectfully submitted,


  /s/  Michael R. Charness
Michael R. Charness
D.C. Bar No. 289322
VINSON & ELKINS, L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue, Suite 600
Washington, D.C. 20004
Telephone:  (202) 639-6780
Facsimile:  (202) 639-6640

ATTORNEYS FOR PUBLIC WAREHOUSING
COMPANY K.S.C.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 13th day of April, 2007 a true and correct copy of the foregoing was filed and served using the Court's ECF system and forwarded to the following known counsel of record by First Class mail, as follows:

*Defendants:*

Office of Counsel
Defense Supply Center Philadelphia
700 Robbins Avenue
Philadelphia, PA  19111

Department of Defense- Office of General Counsel
1600 Defense Pentagon
Washington, DC 20301-1600

Defense Logistics Agency- Office of General Counsel
8725 John J. Kingman Road
STE 1644
Fort Belvoir, VA 22060-6221

Office of Attorney General
U.S. Department of Justice
Room B-103
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Assistant United States Attorney Quan K. Luong
United States Attorney's Office for District of Columbia
501 3rd Street, NW
Washington, DC 20530

          /s/  Michael R. Charness          
          Michael R. Charness

# EXHIBIT A

## McGlinchey, Michael (DSCP)

| | |
|---|---|
| **From:** | Shifton, Gary (DSCP) |
| **Sent:** | Tuesday, March 27, 2007 6:48 AM |
| **To:** | McDuffy, Aditya (DSCP); Ferguson, Gordon (DSCP); Calluso, Al (DSCP); Perry, Elizabeth (DSCP); McGlinchey, Michael (DSCP); Patkus, John (DSCP); Gever, Judith (DSCP); Dlugokecki, Timothy (DSCP); Ford, Linda (DSCP); Daley, Thomas (DSCP); Bellis, Brad CAPT (DSCP) |
| **Subject:** | FW: Past Performance Questionnaire for PWC Logistics |
| **Importance:** | High |
| **Attachments:** | Client - Mr. Shifton.doc; PWC - SPV PPQ.doc |

Team Counsel,

REF:  Order from Today's Hearing --- again, I need to check with Linda to see if a reply was furnished.

v/r,

Gary

_____

| | |
|---|---|
| **From:** | Buck, Pauline E (DSCC) |
| **Sent:** | Friday, September 15, 2006 3:53 PM |
| **To:** | Shifton, Gary (DSCP); Ford, Linda (DSCP) |
| **Subject:** | Past Performance Questionnaire for PWC Logistics |
| **Importance:** | High |

Good Afternoon Mr. Gary Shifton and Ms. Linda Ford,

The Government is soliciting information about the capabilities and performance of PWC Logistics to assist in considering this firm for Defense Logistics Agency (DLA) work.  DLA is a combat support agency with a primary mission of providing fuels, supplies, and services to American military forces worldwide.  This includes the management of over four million consumable items, the processing of more than 30 million annual distribution actions, and the administration of over $900 billion dollars of DoD other agency contracts.

You are identified as a current or previous business partner who can provide performance history for PWC Logistics.  Attached you will find the Client Authorization letter that was forwarded to you from PWC Logistics and a Past Performance Questionnaire with a corresponding contract number.  The questionnaire covers several topics designed to provide basic information regarding PWC Logistics's background and capabilities and your satisfaction with their performance.  The format of the questionnaire follows a five-point scale with 5 being Exceptional, and 1 being Unsatisfactory.  Exceptional is defined as performance meets contractual requirements and exceeds many.  Very Good is defined as performance meets all contractual requirements and exceeds in few.  Satisfactory is defined as performance meets contractual requirements.  Unsatisfactory is defined as performance that does not meet most contractual requirements and recovery is not likely in a timely manner.  Please circle the appropriate number scale that represents your true appraisal of performance.

The information obtained from this questionnaire will be utilized to evaluate the past performance of Offerors making proposals on Defense Logistics Agency (DLA) RFP number SP0700-06-R-7022. If you have any questions on the information requirements, please do not hesitate to call Pauline E. Bradley-Buck (614) 692-2258

Please return the completed questionnaire via e-mail to pauline.buck@dla.mil or fax at 614-692-6273 by close of business, September 21, 2006.  Thanking you in advance for your critical assistance in our evaluation process.

Sincerely,

 

Client - Mr.        PWC - SPV PPQ.doc
Shifton.doc (144 ...     (64 KB)

Pauline Bradley-Buck
Contract Specialist
DSCC-DR
(614) 692-2258
DSN 850-2258

**Past Performance Questionnaire**
**RFPs SP0700-06-R-7022 and SP0700-06-R-7023**

**For Contract No.:**    Subsistence Prime Vendor – SP0300-03-D-3061
**Prime Contractor:**    PWC Logistics

The Government has received a proposal from this company in response to a solicitation for the worldwide supply chain management of tires for the Department of Defense.  Under the Base Realignment and Closure Act (BRAC) of 1990, 10 U.S.C. 2687 note, the BRAC Commission's recommendation to privatize the supply, storage and distribution for tires (Federal Supply Classes (FSC) 2610, 2620, and 2630) became law on November 8, 2005.  This recommendation is intended to create a more responsive supply support to user organizations and deployment, and the sustainment of forces when deployed worldwide.  Privatization enables the Department to take advantage of the latest technologies, expertise, and business practices, which translate into improved support to customers at less cost.  This recommendation disestablishes the wholesale supply, storage, and distribution functions for all tires used by the Department of Defense, retaining only the supply contracting function.  The Department will privatize these functions and will rely on private industry for the performance of management, supply, storage, and distribution of tires to the Department of Defense worldwide.  By doing so, the Department can divest itself of inventories and can eliminate infrastructure and personnel associated with these functions

Your willingness to complete the attached questionnaire is appreciated.  In order to assist us in tabulating the results and so that we may contact you if there is a question, please complete the following information about yourself.  Please return the completed questionnaire via e-mail to pauline.buck@dla.mil or fax at 614-692-6273 by close of business, September 21, 2006.  Thanking you in advance for your critical assistance in our evaluation process.

Thanks very much,

*Pauline E. Bradley-Buck*
Contract Specialist


Evaluator's Name: _____

Evaluator's Telephone Number: _____

Company/Organization Name and Address:

_____

_____

_____

Description of Services Provided by This Company:

Thanks again.

**Past Performance Questionnaire**
**RFPs SP0700-06-R-7022 and SP0700-06-R-7023,**

For contract no.:     <u>Subsistence Prime Vendor – SP0300-03-D-3061</u>
Prime Contractor:     <u>PWC Logistics</u>

**Please fill in appropriate <u>CIRCLE</u> based on the following scale:**

| Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory | Not Applicable |
|:-:|:-:|:-:|:-:|:-:|:-:|
| 5 | 4 | 3 | 2 | 1 | N/A |

## SUPPLY CHAIN MANAGEMENT

**How would you rate this contractor's:**

|  | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:-:|:-:|:-:|:-:|:-:|:-:|
| Performance in developing and optimizing a supply chain management system that allows year to year efficiency increase in infrastructure and in stock availability? | O | O | O | O | O | O |
| Performance in implementing data/information sharing across your supply chain management enterprise? | O | O | O | O | O | O |
| Performance in managing a supply chain management system of multiple commodities to multiple customers located worldwide? | O | O | O | O | O | O |
| Performance in responding and meeting both planned and unplanned variances in customer demands (i.e. surge demands)? | O | O | O | O | O | O |
| Performance in meeting production variances and unplanned disruptions in sourcing, manufacturing and delivery capabilities? | O | O | O | O | O | O |
| Performance in minimizing the impact of diminishing manufacturing sources in meeting the customer requirements? | O | O | O | O | O | O |
| Efficiency related to improving product and/or service performance and investigating and analyzing failure trends? | O | O | O | O | O | O |
| Performance of the supply chain system for contract compliance and meeting performance criteria? | O | O | O | O | O | O |
| Continual assessment and evaluation of the supply chain system for compliance, risks to meeting performance criteria and approach in mitigating stated risk? | O | O | O | O | O | O |

**Past Performance Questionnaire**
**RFPs SP0700-06-R-7022 and SP0700-06-R-7023,**

For contract no.:    <u>Subsistence Prime Vendor – SP0300-03-D-3061</u>
Prime Contractor:    <u>PWC Logistics</u>

Please fill in appropriate <u>CIRCLE</u> based on the following scale:

| Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory | Not Applicable |
|:---:|:---:|:---:|:---:|:---:|:---:|
| 5 | 4 | 3 | 2 | 1 | N/A |

### <u>WAREHOUSING OPERTATIONS</u>

**How would you rate this contractor's:**

| | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:---:|:---:|:---:|:---:|:---:|:---:|
| Performance in managing and performing warehousing and distribution of multiple commodities to multiple customers over a large geographic area? | O | O | O | O | O | O |
| Performance in planning and coping with surge requirements/ demand fluctuations? | O | O | O | O | O | O |
| Response time beginning with the request to fill an order to the time that order is shipped? | O | O | O | O | O | O |
| Performance in packaging and marking as required by type of material and/or customer specifications? | O | O | O | O | O | O |
| Shipment planning performance? | O | O | O | O | O | O |
| Adherence to contract shipment schedules? | O | O | O | O | O | O |
| Care for material in storage and warehouse practices? | O | O | O | O | O | O |
| Performance in resolving problems? | O | O | O | O | O | O |
| Quality control measures? | O | O | O | O | O | O |

### <u>DISTRIBUTION / TRANSPORTATION OPERTATIONS</u>

**How would you rate this contractor's:**

| | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:---:|:---:|:---:|:---:|:---:|:---:|
| On-time delivery of commodities (similar to tires) within the United States? | O | O | O | O | O | O |
| On-time delivery of commodities (similar to tires) worldwide? | O | O | O | O | O | O |

**Past Performance Questionnaire**
**RFPs SP0700-06-R-7022 and SP0700-06-R-7023,**

For contract no.:   <u>Subsistence Prime Vendor – SP0300-03-D-3061</u>
Prime Contractor:   <u>PWC Logistics</u>

**Please fill in appropriate <u>CIRCLE</u> based on the following scale:**

| Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory | Not Applicable |
|:-:|:-:|:-:|:-:|:-:|:-:|
| 5 | 4 | 3 | 2 | 1 | N/A |

| | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:-:|:-:|:-:|:-:|:-:|:-:|
| Performance in navigating and handling custom clearance issues? | O | O | O | O | O | O |
| Performance in providing the customer in-transit visibility assets? | O | O | O | O | O | O |
| Performance in maintaining and obtaining all transportation Documents (i.e., bill of lading, manifests, proof of delivery)? | O | O | O | O | O | O |
| Knowledge of and compliance with federal, state and local laws for storage of commodities similar to tires? | O | O | O | O | O | O |
| Knowledge of and compliance with federal, state and local laws for the transportation of commodities similar to tires? | O | O | O | O | O | O |

## DATA / INFORMATION  MANAGEMENT

| How would you rate this contractor's: | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:-:|:-:|:-:|:-:|:-:|:-:|
| Reporting performance in terms of accuracy and completeness? | O | O | O | O | O | O |
| Performance in keeping you informed? | O | O | O | O | O | O |
| Performance in establishing meaningful dialog and information regarding manufacturing trends, manufacturing issues, obsolescence and monitoring product development? | O | O | O | O | O | O |
| Performance in providing web-based technology for real-time visibility of material/merchandise in storage and/or in transit? | O | O | O | O | O | O |

## TRANISITION PERFORMANCE

| How would you rate this contractor's: | 5 | 4 | 3 | 2 | 1 | N/A |
|---|:-:|:-:|:-:|:-:|:-:|:-:|
| Performance during transition period, i.e., from initial sign on to full performance? | O | O | O | O | O | O |
| Performance at start up? | O | O | O | O | O | O |
| Continuity of operations after start-up? | O | O | O | O | O | O |

**Past Performance Questionnaire**
**RFPs SP0700-06-R-7022 and SP0700-06-R-7023,**

For contract no.:    **Subsistence Prime Vendor – SP0300-03-D-3061**
Prime Contractor:    **PWC Logistics**

**Please fill in appropriate <u>CIRCLE</u> based on the following scale:**

| Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory | Not Applicable |
|:---:|:---:|:---:|:---:|:---:|:---:|
| 5 | 4 | 3 | 2 | 1 | N/A |

| | 5 | 4 | 3 | 2 | 1 | N/A |
|---|---|---|---|---|---|---|
| Professionalism? | O | O | O | O | O | O |
| Responsiveness to customer complaints and questions? | O | O | O | O | O | O |
| Communications of status, progress and problems. | O | O | O | O | O | O |

## <u>FINANCIAL CAPABILITIES</u>

| **How would you rate this contractor's:** | 5 | 4 | 3 | 2 | 1 | N/A |
|---|---|---|---|---|---|---|
| Performance in meeting proposed cost estimates? | O | O | O | O | O | O |
| Approach to and the ease in negotiating change to the contract? (Cooperative (5) to Adversarial (1)) | O | O | O | O | O | O |
| Performance in investing and maintaining a sufficient inventory to support the supply chain and contract performance? | O | O | O | O | O | O |
| Timeliness in paying subcontractors? | O | O | O | O | O | O |
| Financial management practices (payroll, supplier payments, timely and accurate invoicing, etc.)? | O | O | O | O | O | O |
| Performance in meeting financial obligations/commitments on this contract? | O | O | O | O | O | O |

## <u>REVERSE LOGISTICS</u>

| **How would you rate this contractor's:** | 5 | 4 | 3 | 2 | 1 | N/A |
|---|---|---|---|---|---|---|
| Performance in scheduling, retrieving, handling and/or disposing of consumed commodities? | O | O | O | O | O | O |
| Performance in handling of disposals or recycling in accordance with applicable local, state, federal laws or regulations? | O | O | O | O | O | O |

**Past Performance Questionnaire**
RFPs SP0700-06-R-7022 and SP0700-06-R-7023,

For contract no.:    **Subsistence Prime Vendor – SP0300-03-D-3061**
Prime Contractor:    **PWC Logistics**

Please fill in appropriate <u>CIRCLE</u> based on the following scale:

| Exceptional | Very Good | Satisfactory | Marginal | Unsatisfactory | Not Applicable |
|:-----------:|:---------:|:------------:|:--------:|:--------------:|:--------------:|
| 5 | 4 | 3 | 2 | 1 | N/A |

**How would you rate this contractor's:**

| | 5 | 4 | 3 | 2 | 1 | N/A |
|---|---|---|---|---|---|---|
| Overall performance on this contract? | O | O | O | O | O | O |

| | YES | NO |
|---|---|---|
| Would you hire this contractor again? | O | O |

Please fill in appropriate <u>CIRCLE</u> based on the following scale:

| Always | Almost Always | Mostly | Seldom | Never |
|:------:|:-------------:|:------:|:------:|:-----:|
| 5 | 4 | 3 | 2 | 1 |

**Chose the word that best describes the contractor:**

| | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|
| Complies with contract quality standards. | O | O | O | O | O |
| Responds to complaints in a timely manner. | O | O | O | O | O |
| Disputes the scope of the requirements. | O | O | O | O | O |
| Meets timeliness standards or delivery schedules. | O | O | O | O | O |
| Is reliable. | O | O | O | O | O |
| Submits reasonably priced proposals on contract changes | O | O | O | O | O |
| Is cooperative and proactive | O | O | O | O | O |
| Has problems with payroll or paying suppliers, subcontractors. | O | O | O | O | O |
| Difficult when negotiating changes | O | O | O | O | O |
| Anticipates, avoids or mitigates problems. | O | O | O | O | O |
| Billing is timely accurate and complete. | O | O | O | O | O |

**McGlinchey, Michael (DSCP)**

| | |
|---|---|
| **From:** | McDuffy, Aditya (DSCP) |
| **Sent:** | Thursday, March 22, 2007 5:48 PM |
| **To:** | Hallam, Kathleen (DSCP); McGlinchey, Michael (DSCP); Patkus, John (DSCP); Gever, Judith (DSCP) |
| **Cc:** | Calluso, Al (DSCP); Perry, Elizabeth (DSCP) |
| **Subject:** | FW: W91GXZ-07-R-0011 Request for Past Performance data |
| **Attachments:** | W91GXZ-07-R-0011 questionnaire for Agility re PV contract.doc |

Please find attached a new request from PWC.

---

**From:** Dlugokecki, Timothy (DSCP)
**Sent:** Thursday, March 22, 2007 3:22 PM
**To:** Shifton, Gary (DSCP); Ford, Linda (DSCP)
**Cc:** Calluso, Al (DSCP); McDuffy, Aditya (DSCP)
**Subject:** FW: W91GXZ-07-R-0011 Request for Past Performance data

FYI
Request for past performance

---

**From:** Patricia O. Ismail [mailto:PIsmail@agilitylogistics.com]
**Sent:** Thursday, March 22, 2007 3:17 PM
**To:** Dlugokecki, Timothy (DSCP); Ford, Linda (DSCP)
**Subject:** W91GXZ-07-R-0011 Request for Past Performance data

Dear Ms. Ford and Mr. Dlugokecki:

I am writing to you on behalf of Agility concerning Solicitation W91GXZ-07-R-0011 for Warehousing and Transportation Services in Iraq.

I have been asked to communicate to you regarding a request to complete a survey of our performance under the Subsistence Prime Vendor contract in support of a proposal we are submitting to the Joint Contracting Command-Iraq/Afghanistan, Facilities and Transportation Sector.

As part of the solicitation process, it is requested that current performance be assessed for the contracts our company currently operates. It is therefore requested that you, as Contracting Officer for current Subsistence Prime Vendor contract, review the enclosed letter providing instructions to complete the questionnaire, and the questionnaire itself and forward to the following email addresses: JCCI_Fac_Trans@pco-iraq.net and Liz.Anton@pco-iraq.net

The due date for submission of the questionnaire is **01 April 2007,** so your submission of a completed questionnaire by the due date would be greatly appreciated.

I hope that the quality of service provided by Agility will allow you to rate us positively for this solicitation.

If you have any questions regarding the solicitation, questionnaire, or any other item, please do not hesitate to contact me for clarification.

I appreciate your time in completing this questionnaire and thank you for your anticipated cooperation.

*Patricia*

**Patricia O. Ismail**
Senior Contract Manager
***Agility – Defense & Government Services***
***The new name for PWC Logistics Services***




Safat, Kuwait
Tel. +965-498-1108
Mobile +965-962-9574
Fax +965-498-1094
p.ismail@agilitylogistics.com
www.agilitylogistics.com

*****************************NOTICE***********************************

This transmittal and/or attachments have been issued by Agility. The information contained here within may be privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify us immediately by reply or by telephone (Tel. +965-809-222) and immediately delete this message and all its attachments.

**ATTACHMENT 5**
**PAST PERFORMANCE QUESTIONNAIRE**

MEMORANDUM FOR PAST PERFORMANCE REFERENCES

FROM:  Joint Contracting Command – Iraq/Afghanistan

SUBJECT: Request for Past Performance Information for RFP, W91GXZ-07-R-0011

1.  Joint Contracting Command – Iraq (JCC-I) is in the process of selecting contractors for a Strategic Logistics Distribution System in and around Iraq. We requested offerors forward this letter and past performance questionnaire to points of contact for similar type services performed or currently in process.  One of our award criteria includes the evaluation of the offeror's past performance on prior contracts and contracts currently in progress.  It is for that purpose that your comments are solicited on the attached questionnaire.

2.  Please have the questionnaire completed by the person(s) most familiar with the contractor's performance on subject contract.  This should be a joint endeavor between the Contracting Office and customers in the process.  Your candid responses to the questions are important to our evaluation effort and may affect the award outcome.   Please note the "neutral" rating for questions not applicable to work performed on your contracting action.

3.  Your personal attention to this matter would be greatly appreciated.  Please submit your past performance questionnaire directly to our office at JCCI Fac Trans@pco-iraq.net    and Liz.Anton@pco-iraq.net as soon as possible, **but no later then 01 Apr 2007**.  It may be necessary to contact you by telephone to discuss questionnaire responses. As this questionnaire relates to an ongoing source selection, once it is filled out, it should be handled as Source Selection Sensitive Information in accordance with FAR 3.104.   JCC-IA will safeguard the information once received, to include not releasing the names of any respondents, outside the Source Selection Evaluation Organization.

4.  Please do not hesitate to email our office if you have any questions regarding the questionnaire. If additional information is required, please contact us at the above mentioned email addresses. Responses may be submitted to this office as indicated on the cover of the questionnaire. Thank you for your cooperation.

//signed//
DEREK W. KARIS
Contracting Officer, JCC-I/A

Past Performance Questionnaire

## PAST PERFORMANCE QUESTIONNAIRE
## FOR SOLICITATION W91GXZ-07-R-0011

**CONTRACT INFORMATION**:
A. Contractor:      Agility (formerly PWC Logistics)

B. Contractor Address: Sulaibiya, Kuwait

C. Contract Number:  SPO300-03-D-3061

D. Status:  Completed

E. Contract Amount:  $1.36 billion            E. Period of Performance: May 2003 – February 2005

F. Services Provided (Explain in detail the type of services provided by the contractor):

Agility procured warehoused and distributed subsistence items supporting the U.S. Military in Iraq. There were approximately 1,100 line items that were carried on the various catalogs based on the 21 day Contingency Operations (CONOPS) menu. PWC provided frozen foods, chilled and dry food products from USDA/USDC approved CONUS sources and also supplies Local Market Ready items (fresh fruit and vegetables, dairy products, fresh bakery products, beverages and juices mainly) from VETCOM approved local OCONUS sources. In addition, Agility supplied non-food items such as Food Services Operating Supplies (FSOS) and Government Furnished Materials (GFM), Health and Comfort Packs (HCP), and other operational ration items. Agility used our transport fleet of 1,500 trucks in Kuwait to transport the food into Iraq. Agility operated a 24/7 warehousing and logistics operation and used our proprietary Exceed Warehouse Management System (WMS) software for warehouse and inventory management. Exceed WMS is supplemented with Radio Frequency (RF) communications and scanning capabilities. All Prime Vendor warehouses used Exceed to process and manage all stock related transactions, thus maintaining real time stock balances.

**RESPONDENT IDENTIFICATION (****NOT TO BE RELEASED OUTSIDE GOVERNMENT CHANNELS****)**

A. Name: _____

B. Position and Title: _____

C. Phone Number: _____

D. Address: _____

_____

E. Relationship and Time involved with Contractor: _____

F. Date questionnaire was completed: _____

Questionnaire may be emailed to the following address:

JCCI_Fac_Trans@pco-iraq.net  and Liz.Anton@pco-iraq.net

## CONTRACTOR RATING

1.  In this section of the questionnaire you are asked to rate the contractor.  Please indicate the rating that best applies.  If you wish to elaborate on any of your answers, please provide comments at the end of this section. If more space is needed, continue your comments on a separate sheet of paper and attach it to this questionnaire prior to submission.

2.  You are urged to supplement your own knowledge of the contractor's performance with the judgment of others in your organization.  Any marginal ratings should be supplemented with an explanatory narrative in the remarks block of this survey

3.  **ONCE COMPLETED, THIS SURVEY WILL BE CONSIDERED SOURCE SELECTION SENSITIVE IN ACCORDANCE WITH FAR PART 3.104**

4.  The following definitions are applicable rating levels for the contractor's performance:

| | |
|---|---|
| (E) Exceptional/High Confidence | Based on the offeror's performance record, essentially **no doubt exists** that the offeror will successfully perform the required effort. |
| (VG) Very Good/Significant Confidence | Based on the offeror's performance record, **little doubt exists** that the offeror will successfully perform the required effort. |
| (S) Satisfactory/Confidence | Based on the offeror's performance record, **some doubt exists** that the offeror will successfully perform the required effort. |
| (N) Neutral/Unknown Confidence | **No performance record** identifiable. |
| (M) Marginal/Little Confidence | Based on the offeror's performance record, **substantial doubt exists** that the offeror will successfully perform the required effort.  Changes to the offeror's existing processes may be necessary in order to achieve the contract requirements. |
| (U) Unsatisfactory/No Confidence | Based on the offeror's performance record, **extreme doubt exists** that the offeror will successfully perform the required effort. |

| **CONTRACTOR'S RESPONSIVENESS** | |
|---|---|
| 1.   Rate the contractor's ability to meet specific response times and completion dates. | E   VG   S   N   M<br>U |
|       Has the contractor ever been assessed liquidated damages? | Yes (Explain)  or No |
| 2. Rate the timeliness of contractor's response to emergency situations/requirements. | E   VG   S   N   M<br>U |
| 3. To what extent did the contractor provide reliable, supportable cost estimates? | E   VG   S   N   M<br>U |
| **QUALITY CONTROL AND WORKMANSHIP** | |
| 1.  Rate the contractor's overall responsiveness in terms of quality and workmanship. | E   VG   S   N   M<br>U |
| **CUSTOMER SATISFACTION** | |
| 1. How flexible was the contractor at satisfying customer requirements? | E   VG   S   N   M<br>U |
| 2. To what extent was the contractor cooperative, businesslike, and concerned with the interests of the customer? | E   VG   S   N   M<br>U |
| **CONTRACTOR MANAGEMENT** | |
| 1.  Rate the working relationship between the contractor, your company and your designated representative (to include inspection personnel) . | E   VG   S   N   M<br>U |
| 2. Rate the contractor's ability to meet appropriate staffing/manning levels with qualified personnel. | E   VG   S   N   M<br>U |
| 3. How effective was on-site management, including management of subcontractors? | E   VG   S   N   M<br>U |
| 4.  How knowledgeable were key personnel of the contract requirements? | E   VG   S   N   M<br>U |
| 5.  Rate the contractor's ability to identify and correct, and prevent potential contractual problems early, and advise before the problem becomes a delay or life-threatening situation. | E   VG   S   N   M<br>U |
| **COMPLIANCE WITH ENVIRONMENTAL /SAFETY AND SECURITY** | |
| 1. Has the contractor ever received any Notification of Violations resulting from contract performance? | Yes (Explain)  or No |
| 2. Rate the contractor's compliance with environmental, safety, and security requirements. | E   VG   S   N   M<br>U |
| **CONTRACTUAL OBLIGATIONS** | |
| 1.  Has a cure notice or show cause notice ever been issued? | Yes (Explain)  or No |
| 2. To what extent, if any, has the contractor had any problems obtaining bonding? | E   VG   S   N   M<br>U |
| 3. To what extent did the contractor submit required reports and documentation timely and accurate? | E   VG   S   N   M<br>U |
| 4.  Rate the contractor's achievement of subcontracting plan goals (if applicable)? | E   VG   S   N   M<br>U |
| 5.  Would you hire this contractor again?  Highly likely--, Likely--, Unlikely--, Highly Unlikely | HL   L   U   HU |

**ADDITIONAL COMMENTS -** Please feel free to provide any objective comments/additional information for this contract or on any other contracts performed by the contractor that may be of interest:

**McDuffy, Aditya (DSCP)**

| | |
|---|---|
| **From:** | Shifton, Gary (DSCP) |
| **Sent:** | Thursday, March 22, 2007 7:22 PM |
| **To:** | Dlugokecki, Timothy (DSCP); Ford, Linda (DSCP) |
| **Cc:** | Calluso, Al (DSCP); McDuffy, Aditya (DSCP); Amendolia, Anthony (DSCP) |
| **Subject:** | Re: W91GXZ-07-R-0011 Request for Past Performance data |

All,

Will be in a little late tomorrow --- around 0930.

Gs

-------------------------
Gary Shifton
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Dlugokecki, Timothy (DSCP)
To: Shifton, Gary (DSCP); Ford, Linda (DSCP)
CC: Calluso, Al (DSCP); McDuffy, Aditya (DSCP)
Sent: Thu Mar 22 15:21:32 2007
Subject: FW: W91GXZ-07-R-0011 Request for Past Performance data

FYI
Request for past performance


_____

From: Patricia O. Ismail [mailto:PIsmail@agilitylogistics.com]
Sent: Thursday, March 22, 2007 3:17 PM
To: Dlugokecki, Timothy (DSCP); Ford, Linda (DSCP)
Subject: W91GXZ-07-R-0011 Request for Past Performance data


Dear Ms. Ford and Mr. Dlugokecki:


I am writing to you on behalf of Agility concerning Solicitation W91GXZ-07-R-0011 for
Warehousing and Transportation Services in Iraq.


I have been asked to communicate to you regarding a request to complete a survey of our
performance under the Subsistence Prime Vendor contract in support of a proposal we are
submitting to the Joint Contracting Command-Iraq/Afghanistan, Facilities and
Transportation Sector.


As part of the solicitation process, it is requested that current performance be assessed
for the contracts our company currently operates.  It is therefore requested that you, as
Contracting Officer for current Subsistence Prime Vendor contract, review the enclosed
letter providing instructions to complete the questionnaire, and the questionnaire itself
and forward to the following email addresses:  JCCI_Fac_Trans@pco-iraq.net  and
Liz.Anton@pco-iraq.net

The due date for submission of the questionnaire is 01 April 2007, so your submission of a completed questionnaire by the due date would be greatly appreciated.

.

I hope that the quality of service provided by Agility will allow you to rate us positively for this solicitation.

If you have any questions regarding the solicitation, questionnaire, or any other item, please do not hesitate to contact me for clarification.

I appreciate your time in completing this questionnaire and thank you for your anticipated cooperation.

Patricia

Patricia O. Ismail
Senior Contract Manager
Agility — Defense & Government Services

The new name for PWC Logistics Services

Safat, Kuwait
Tel. +965-498-1108
Mobile +965-962-9574
Fax +965-498-1094

p.ismail@agilitylogistics.com <mailto:jsmith@agilitylogistics.com>

www.agilitylogistics.com <http://www.agilitylogistics.com/>

***************************NOTICE****************************************
This transmittal and/or attachments have been issued by Agility. The information contained here within may be privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify us immediately by reply or by telephone (Tel. +965-809-222) and immediately delete this message and all its attachments.

**PERFORMANCE QUESTIONNAIRE**
**For PWC Logistics ( A VSE Corporation Team Member)**

Contractor:          PWC LOGISTICS SERVICES          Prime or Subcontractor: Prime

Contract Number: SP0300-03-D-3061          Contract Type: Fixed Price

SPM300-05-D-3119 (Bridge Contract)

SPM300-06-D-3128 (Current)

Description of Service: Procurement, storage and distribution of food and non-food products to the US Army and US Air Force operating in Iraq, Kuwait, and Jordan

Period of Performance:  SP0300-03-D-3061 – 28 June 2003 to 14 Feb 2005

SPM300-05-D-3119 – 15 Feb 2005 to 04 Dec 2005

SPM300-06-D-3128 - 05 Dec 05

Contract Value at Award:  SP0300-03-D-3061:  $1,455,473,760

SPM300-05-D-3119: $1,708,858,748

SPM300-06-D-3128: $1,400,667,060

There is a base year and three (3) available option periods (eighteen month base, options 1 and two up to one year, eighteen month third and final option period.)  The maximum dollar values "for each zone" will be 3X the estimated dollar value "for zone 1" equating to $4,202,001,180.  The guaranteed minimum is 1% of the estimated dollar value for the base year and the 3 option periods

Current:

**PLEASE FILL IN THE FOLLOWING RESPONDENT INFORMATION:**

Name of Evaluator:

Office Symbol and Organization: Phone

(Commercial & DSN):

Fax Number & E-mail Address:

Position Title and Grade: Contracting Officer

Dates of Involvement in Program/Contract:

Date Questionnaire completed:

The following questions should be given a rating of Above Satisfactory, Satisfactory, Below

Satisfactory or Not Applicable.  Each question should be supplemented with explanatory narrative. If the question is not applicable, circle "N/A".

**ABOVE SATISFACTORY:** Indicates the company's performance or situation <u>within the area of evaluation</u> EXCEEDS SOME contractual requirements/expectations (as applicable) while MEETING ALL OTHER contractual requirements/expectations (as applicable).

**SATISFACTORY:** Indicates the company's performance or situation <u>within the area of evaluation</u> MEETS ALL contractual requirements/expectations (as applicable).

**BELOW SATISFACTORY:** Indicates the company's performance or situation <u>within the area of evaluation</u> MEETS ALL CRITICAL contractual requirements/expectations (as applicable) and DOES NOT MEET OTHER NON CRITICAL contractual requirements/expectation (as applicable).

AS=ABOVE SATISFACTORY S=SATISFACTORY

BS=BELOW SATISFACTORY        NA=NOT APPLICABLE

**1.  Provide a brief description of services provided:**

_____
_____
_____
_____
_____

**2.  Describe and rate the Quality of Services provided:**          AS  S  BS  NA

_____
_____
_____
_____

**3.  Describe and rate the Timeliness of Performance (adherence to contractual schedule) provided:**
                                                                  AS  S  BS  NA

_____
_____
_____
_____

**4.  Describe and rate Management of Key personnel:**          AS  S  BS  NA

_____
_____
_____
_____

**5.  Describe and rate Ability to provide quality personnel and adequate non-labor resources:**
                                                                  AS  S  BS  NA

_____
_____

_____
_____

**6.  Describe and rate Business Relations (including small business goal achievement and compliance with limitation of subcontracting:**                    **AS  S  BS  NA**
_____
_____
_____
_____

**7.  Describe and rate Cost Control (Ability to meet terms of the contract within the contractually agreed upon prices):**                    **AS  S  BS  NA**
_____
_____
_____
_____

**8.  Describe and rate the Ability to Understand and Resolve deficiencies in a timely manner with no adverse impact on the mission:**                    **AS  S  BS  NA**
_____
_____
_____
_____

**9.  Describe and rate the Effectiveness of internal and external communication:**
                    **AS  S  BS  NA**
_____
_____
_____
_____

**10.  Describe your overall satisfaction with Contractor performance:**         **AS  S  BS  NA**
_____
_____
_____
_____

**ADDITIONAL REMARKS:**

**11.  Would You Award similar contracts to this contractor (Why or Why Not):     Yes No**
_____
_____
_____
_____
_____
_____

**12.  Did the Contractor have any significant achievements or resolve any significant problem**

during the course of performing services; if so, identify problem and how problem was resolved:

                                                                    Yes    No
_____
_____
_____
_____
_____
_____
_____

**13. How would you rate the Contractor's Overall Cooperation and Performance:**

                                                                AS    S    BS
_____
_____
_____
_____
_____
_____
_____

THANK YOU IN ADVANCE FOR YOUR ASSISTANCE

*Agility*

Defense & Government Services

February 12, 2007

Greetings,

As you already know, Agility Defense and Government Services, the new name for PWC Logistics, takes great care in ensuring that all of our customers are provided with services that are nothing less than world class. Since Defense & Government Services (DGS) is the company's public sector arm, we are routinely held to the highest standards of excellence in order to guarantee we are providing the US Government with the best possible service. By doing so, Agility has earned the trust and respect of customers such as the U.S. Armed Services, the Defense Logistics Agency, the Army Air Force Exchange Service (AAFES) and the United Nations. Our commitment to quality has enabled us to stand out as a premier logistics provider and earn such coveted distinctions such as "Best Industry Leader in Military Logistics" 2006, by the Institute for Defense and Government Advancement, and by becoming the Defense Logistics Agency's number one vendor in terms of business share.

Our high degree of commitment towards quality and customer care has enabled us to grow and expand our service offerings into new and exciting markets. As part of this growth, Agility is now initiating an application for a General Service Administration (GSA) Contract. By becoming a GSA contractor, Agility will significantly increase the accessibility to our services. Government agencies and organizations will be able to browse all of our services through the GSA website, and then select and purchase those services quickly and efficiently.

As part of the GSA Schedule Application Process, Agility is coordinating a Past Performance Review. This will involve a past performance questionnaire and is an integral part of the application process. In order to maintain the highest levels of quality, the General Service Administration demands its schedule holders to maintain the highest standards of quality service possible. Therefore, a positive rating on the past performance questionnaire is essential in becoming a GSA Contractor. We would ask that you take the time to complete the survey and hope that the level of service you have experienced with PWC leads you to positively respond to the attached past performance questionnaire
.
I sincerely thank you for you assistance in this process.

Best regards,


Maj. Gen. Dan Mongeon, USA (Ret.)
President, Agility, Defense & Government Services – US


1 Attachment

1725 Duke Street, Suite 450, Alexandria, VA 22314
Tel. (703) 417-6960, Fax. (703) 417-6920
PWC Logistics Services, Inc. www.agilitylogistics.com



### PRESENT/PAST PERFORMANCE QUESTIONNAIRE
### SOLICITATION NUMBER TFTP-MB-0087405-B

**Please return this questionnaire to the Management Services Center, 400 15th St SW, Auburn, Washington, 98001**

**This form may also be returned via email to the following address:**
katherine.jocoy@gsa.gov

**Name of Offeror (Company Name) requesting Past Performance Information:**

**Name:**        PWC Logistics Services Inc. dba Agility

**Address:**        1725 Duke Street, Suite 450

        Alexandria, VA 22314

1.  __SPECIFIC QUESTIONS__:  The following questions are divided into two types: YES/NO and RATING.  The YES/NO questions should be supplemented with explanatory narrative.  When responding to the RATING type questions, choose the RATING that most accurately describes the contractor's performance or situation.  The Rating's are identified as follows:

|  |  |  |
|---|---|---|
| N = Unable to provide score | E = Exceptional | S = Satisfactory |
| M = Marginal | U = Unsatisfactory |  |

__Timeliness:__        How would you rate the contractors ability to deliver a service on time?

__Business Conduct__:   Contractors ability to work independent of outside (government or other) Guidance
Contractors ability to meet the terms of the contract within the contractually agreed upon price

__Customer Satisfaction__:  Contractors ability to provide prompt and courteous service.

Contractor's ability to promptly and courteously resolve customer complaints or special requirements.

__Quality:__        Contractors possession and utilization of equipment necessary for adequate to accomplish services?

Contractor's personnel skills and ability to perform the service?

Has a cure notice or show cause letter ever been issued?
If yes please explain why?

Was the contract terminated for default or is it being considered for termination? _____

_____

Has an election ever been made to not exercise an option due to the contractor's poor performance? _____

_____

2. Thank you for completing this questionnaire for the General Services Administration, Management Services Center. The following information will help us track the responses received. You are advised that FAR 15.506 (e)(4) prohibits the release of the names of individuals providing reference information about an offeror's past performance. THIS INFORMATION WILL BE KEPT CONFIDENTIAL.

Name of Evaluator:
_____

Organization and Office Symbol
_____

Phone: _____ Fax _____

Mailing Address:
_____

_____

_____

Position Title: _____

Length of involvement with contract: _____

Date Questionnaire completed: _____

3. CONTRACT IDENTIFICATION

Contractor:
_____

Contract Number:
_____

Program Title and Brief Description of Contracted Services/Support:

**From:** Ford, Linda (DSCP)
**Sent:** Wednesday, October 04, 2006 3:13 PM
**To:** Gruber, Terri E (DSCR)
**Cc:** Dlugokecki, Timothy (DSCP); Barnwell, Ginny (DSCP); Shifton, Gary (DSCP)
**Subject:** FW: Past performance questionnaire

**Attachments:** PPQuestionnairePWC.doc
Terri,

It will be better for us to respond to your questions in writing.  We will get you a reply NLT 11 Oct 06.


Sorry for any inconvenience,
Linda



Linda L. Ford
Contracting Officer
DSCP-FTABM
Prime Vendor Middle East
Commercial: (215) 737-7804 / DSN 444-7804
Fax: (215) 737-2161 / DSN 444-2161

---

**From:** Gruber, Terri E (DSCR)
**Sent:** Monday, October 02, 2006 1:24 PM
**To:** Ford, Linda (DSCP)
**Cc:** Dlugokecki, Timothy (DSCP)
**Subject:** Past performance questionnaire

Hi Linda,

Thanks for taking the time to help us out.  Please call between 2 – 4 on Wed afternoon.

Sincerely,
Terri Gruber
Acquisition Specialist
DSCR
804-279-3459

# PAST PERFORMANCE QUESTIONNAIRE

Contractor's Name and Title:  PWC Logistics  SP0300-03-D-3061

Contractor's Address/Location: _____

Type of Contract: PV Program_____

Description of Work:  Storage & Distribution of Subsistence items_____

Contract Dollar Value:  $14 billion_____

Date of Award: 6/28/03_____

Contract Completion Date:  6/27/08_____


1.  What role did you play in this contract (COR, Contract Specialist, ACO, etc)?  How long
    have you been or were you involved with this program?




CONTRACT PERFORMANCE
2.  How did the contractor perform overall in regards to technical performance; quality of the
    product/service; schedule; cost control; business relations; and management?




        a.  Did the contractor accurately estimate and manage resources required to perform
    the assigned tasks in accordance with requirements?




COMPANY _____

     b. Did the company use subcontractors?  How well did the prime manage the subcontractors?  Did the subcontractors perform the bulk of the effort or just add breadth or dept on particular technical areas?

     c. How well did the contractor manage complex projects at multiple, geographically dispersed locations?  (if applicable)

CONTRACTOR BEHAVIOR
  3. How well did the contractor adapt to changes in requirements or changes in priority?

  4. Were there any significant risks involved in the performance of this contract?  If so, how well did the contractor manage the risks?

  5. Did you encounter any major problems during this contract, i.e. meeting milestones?   If so, how were they handled by the contractor?

  6. Was the contractor cooperative in resolving issues and did they show a business-like concern for its customers neeus??

COMPANY _____

7. What can you tell me about this company's weaknesses?

    a. What did you like least about working with this company?

    b. Do you have any reservations about recommending a future contract award to this company?

**OTHER**

8. Have you performed any other efforts besides this one with this company?

COMPANY _____



# PWC LOGISTICS
### Global Supply Chain Excellence

March 15, 2006

Defense Supply Center Philadelphia,
Directorate of Subsistence – Building 6
700 Robbins Avenue.
Philadelphia, PA – 19111-5092

Dear Linda,

PWC, along with a consortium of two other companies, is responding to a solicitation from the US Navy to provide global contingency support services in response to natural disasters, humanitarian efforts and other requirements.

The Navy is placing increased emphasis in their acquisitions on past performance as a source selection factor. They are requiring those clients of entities responding to their solicitation to be identified, and their participation in the evaluation process is requested.

We therefore respectfully request that you take a moment to review the attached Past Performance Survey and complete section 4 of the attached JL-5 form.

When complete, please submit the form to the naval office listed below

> **Naval Facilities Engineering Command Pacific**
> **ATTN: AQ22**
> 258 Makalapa Dr Ste 100
> Pearl Harbor, HI 96860-3134
>
> FAX : 808-471-5881
> **Email: GCSC@navy.mil**

Receipt by email is the preferred method of delivery for the US Navy. The deadline for submission to the Navy is 23 March 2006, but your earliest submission would be most appreciated.

Any questions may be directed to Mr. Peter Shaw, Business Development Manager, PWC Logistics, at pr.shaw@pwclogistics.com or + (965) 962-8974 or myself at ty.switzer@pwclogistics.com or + (965) 9835801

Thanks for your support,

C.P. (Toby) Switzer
Commander, US Navy ( Retired)
Managing Director, PWC Prime Vendor
PWC Logistics

Enclosure: Attachment JL-5 Contractor Past Performance Survey

4965
Tel: 809222
Fax: 4839617
www.pwclogistics.com

The Public Warehousing Company KSC     شركة المخازن العمومية ش.م.ك.
المــلبيــة بجانب جمارك وارد البر
P.O. Box 25418 Safat 13115 Kuwait | Sulaibia - Beside Land Customs Clearing Area

ATTACHMENT JL-5
CONTRACTOR PAST PERFORMANCE SURVEY

## SECTION 1: CONTRACT IDENTIFICATION

A. Contractor name and address:
   **Public Warehousing Company K.S.C**
   **P. O Box 25418**
   **Safat 13115**
   **Kuwait**

B. Cage Code of contractor contract was awarded to: **SG137**

C. Contract Number and title: **SP0300-03-D-3061**

   **SPM300-05-D-3119 (Bridge Contract)**

D. Contract type: **Fixed Price contract**

E. Was this a competitive Contract? Yes √     No ☐

F. Role of contractor: Prime √     Sub ☐

G. Period of performance: **SP0300-03-D-3061 – 28 June 2003 to 14 Feb 2005**

   **SPM300-05-D-3119 – 15 Feb 2005 to 04 Dec 2005**


H. Initial contract cost:

   **SP0300-03-D-3061: $22,391,904.00**
   **SPM300-05-D-3119: $1,090,436,158.00** *(The normal ceiling was 50% over the estimated dollar value. In the event of contingencies, the maximum dollar value to be limited to three times the estimated dollar value)*

I. Current/final contract cost:

   **SP0300-03-D-3061: $1,455,473,760**

   **SPM300-05-D-3119: $1,708,858,748**


J. Reasons for differences between initial contract cost and final contract cost:

Under SP0300-03-D-3061, Iraq was added as an additional deployment zone (Under

Modification P00001) with a maximum value up to 1200% of original contract cost.


N62742-06-R-1113

K. Description of service provided: **Procurement, storage and distribution of food and non-food products to the US Army and US Air Force operating in Iraq, Kuwait, and Jordan**

## SECTION 2: CUSTOMER OR AGENCY IDENTIFICATION

A. Customer or agency name:

**Defense Supply Center Philadelphia (DSCP)**

B. Customer or agency description (if applicable):  Defense Logistics Agency (DLA)

C. Geographic description of services under this contract, i.e. local, nationwide, worldwide, or Command **OCONUS, remote, wartime environment**

## SECTION 3: EVALUATOR IDENTIFICATION

A. Organization name: **Defense Logistics Agency**

B. Evaluator's name: **Linda Ford**

C. Evaluator's title**: Contracting Officer**

D. Evaluator's phone/fax number: Phone Number **: (215)737-7804**
FAX Number:  **(215) 737-2161**
E-mail address: Linda.Ford@dla.mil

E. Number of year's evaluator worked on subject contract: 2 years 6 months

## SECTION 4: EVALUATION

Please indicate your satisfaction with the contractor's performance by choosing the appropriate rating below for each question. In the box marked "Remarks" please discuss each and every response for which you indicated Exceptional, Marginal, or Unsatisfactory. The performance level scale is defined as follows:

<u>PERFORMANCE LEVEL</u>

EXCEPTIONAL - The contractor's performance meets contractual requirements and exceeds many (requirements) to the Government's benefit. The contractual performance was accomplished with few minor problems for which corrective actions taken by the contractor were highly effective.

VERY GOOD - The contractor's performance meets contractual requirements and exceeds some (requirements) to the Government's benefit. The contractual performance was accomplished with some minor problems for which corrective actions taken by the contractor were

effective.

SATISFACTORY - The contractor's performance meets contractual requirements. The contractual performance contained some minor problems for which corrective actions taken by the contractor appear or were satisfactory.

MARGINAL - Performance does not meet some contractual requirements. The contractual performance reflects a serious problem for which the contractor has not yet identified corrective actions or the contractor's proposed actions appear only marginally effective or were not fully implemented.

UNSATISFACTORY - Performance does not meet most contractual requirements and recovery is not likely in a timely manner. The contractual performance contains serious problem(s) for which the contractor's corrective actions appear or were ineffective.

NOT APPLICABLE - Unable to provide a score.

ATTACHMENT JL-5
CONTRACTOR PAST PERFORMANCE SURVEY

## **TECHNICAL PERFORMANCE**

1. Ability to meet quality standards specified for technical performance.

    Rating:

    Remarks:

2. Compliance with contractual terms and conditions.

    Rating:

    Remarks:

3. Quality/integrity of technical data/report preparation efforts.

    Rating:

    Remarks:

4. Adequacy/effectiveness of quality control program and adherence to contract quality assurance requirements.

    Rating:

    Remarks:

## **PROGRAM MANAGEMENT**

5. Effectiveness of overall contract management (including ability to effectively lead, manage and control the program).

    Rating:

    Remarks:

6. Contractor was reasonable and cooperative in dealing with your staff (including the ability to successfully resolve disagreements/disputes; responsiveness to administrative reports).

    Rating:

    Remarks:

## ATTACHMENT JL-5
## CONTRACTOR PAST PERFORMANCE SURVEY

7. Timeliness/effectiveness of contract problem resolution without extensive customer guidance.

Rating:

Remarks:

8. Ability to understand/comply with customer objectives and technical requirements.

Rating:

Remarks:

9. Ability to successfully respond to emergency and/or surge situations.

Rating:

Remarks:

10. Quality/effectiveness of sub-contracted efforts.

Rating:

Remarks:

11. Effectiveness of material management.

Rating:

Remarks:

12. Effectiveness of acquisition management.

Rating:

Remarks:

13. Contractor proposed innovative alternative methods/processes that reduced cost, improved maintainability or other factors that benefited the customer.

Rating:

Remarks:

ATTACHMENT JL-5
CONTRACTOR PAST PERFORMANCE SURVEY

14. Contractor implemented responsive/flexible processes to improve quality and timeliness of support.

    Rating:

    Remarks:

15. Contractor responsiveness relative to resolving customer complaints.

    Rating:

    Remarks:

16. Contractor safety record.

    Rating:

    Remarks:

17. Government Contracts Only: **If this is a cost type contract, the Contractor was timely in submitting monthly invoices with appropriate back-up documentation and monthly status reports/budget variance reports.**

    ☐ YES       ☐ NO

    If yes, were these submittals and reports accurate?

    ☐ YES       ☐ NO

    Remarks:

## **TRANSITION/PHASE-IN**

18. Contractor ability to smoothly transition resources and personnel.

    Rating:

    Remarks:

19. Contractor effectiveness on maintaining continuity of mission support while transitioning/phasing in resources and personnel to support other efforts.

    Rating:

    Remarks:

N62742-06-R-1113

ATTACHMENT JL-5
CONTRACTOR PAST PERFORMANCE SURVEY

## EMPLOYEE RETENTION/ATTRACTION

20. Ability to hire/apply a qualified workforce to this effort.

Rating:

Remarks:

21. Ability to retain a qualified workforce on this effort

Rating:

Remarks:

22. Effectiveness of employee compensation towards quality of work.

Rating:

Remarks:

23. Please discuss each and every response for which you indicated Exceptional, Marginal, or Unsatisfactory in response to the questions above.

24. Government Contracts Only: Has/was this contract been partially or completely terminated for default or convenience or are there any pending terminations?

| FOR DEFAULT | YES ☐ | NO ☐ |
|---|---|---|
| FOR CONVENIENCE | YES ☐ | NO ☐ |
| PENDING TERMINATIONS | YES ☐ | NO ☐ |

If yes, please explain (e.g. inability to meet cost, performance or delivery schedules, etc.)

25. Have there been any indications that the contractor has had any financial problem?

26. Rate the contractor's overall performance under this contract.

Rating:

Remarks:

N62742-06-R-1113

ATTACHMENT JL-5
CONTRACTOR PAST PERFORMANCE SURVEY

## SECTION 5: NARRATIVE SUMMARY

27. What were the contractor's greatest strengths in the performance of the contract?

28. What were the contractor's greatest weaknesses in the performance of the contract:

29. Would you have any reservations about soliciting this contractor in the future or having them perform one of your critical and demanding programs?

30. Please provide any additional comments concerning this contractor's performance, as desired.

**THANK YOU FOR YOUR PROMPT RESPONSE AND ASSISTANCE!**

Please return this completed questionnaire to:

Naval Facilities Engineering Command Pacific
ATTN: AQ22
258 Makalapa Dr Ste 100
Pearl Harbor, HI 96860-3134

Or FAX to: 808-471-5881

Or email: GCSC@navy.mil

N62742-06-R-1113

## McGlinchey, Michael (DSCP)

| | |
|---|---|
| **From:** | Brian Foldenauer [bn.foldenauer@pwclogistics.com] |
| **Sent:** | Tuesday, March 21, 2006 10:55 PM |
| **To:** | DiMeo, Maryann (DSCP); Ford, Linda (DSCP) |
| **Cc:** | Murray, Chris H MAJ Contracting Officer USA; Sam McCahon |
| **Subject:** | DSCP-PV Past Performance Eval Request |
| **Importance:** | High |
| **Attachments:** | Past Performance Review_DSCP.doc |

To Whom it May Concern,

PWC Logistics is bidding on a U.S. Government contract for warehousing services in Kuwait. We respectfully request that you kindly fill out the attached and return to the SW Asia Contracting Office (POC is MAJ Murray who is cc'd on this e-mail).

We appreciate your assistance.

Best Regards,

**Brian Foldenauer**
**Business Development Manager**
Defense and Government Services
**PWC Logistics**
Direct: +965 498-1118
Fax: +965 467-3126
Mobile: +965 695-5931
E-mail: bn.foldenauer@pwclogistics.com
URL: www.pwclogistics.com
**Global Supply Chain Excellence**

*******************************NOTICE*****************************************
This transmittal and/or attachments have been issued by Public Warehousing Company K.S.C.
The information contained here within may be privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify us immediately by reply or by telephone (Tel. +965-809-222) and immediately delete this message and all its attachments.

# PWC LOGISTICS
**Global Supply Chain Excellence**

**Defense Supply Center Philadelphia (DSCP) – Prime Vendor**
Ref: Contract Number – SP0300-03-D-3061

To Whom it May Concern,

In response to a solicitation for maintenance / operation services, PWC Logistics has provided the referenced contract number and your name as a point of reference on the mentioned effort.

It would be appreciated if you assisted us in our review of the Contractor if you could answer the following questions.

1.  How would you rate the Contractor's performance capabilities under the referenced contract? Their concern for quality?


2.  How would you rate the contractor concern for timeliness and ability to work within time constraints?


3.  How would you rate their ability to control costs under the contract?


4.  How would you rate their ability to hire, manage and retain personnel appropriate to maintenance / operation services? How would you rate the firm's overall business relationships?


5.  Would you work with the Contractor again? How would you rate your customer satisfaction with the firm?


**Note: Please return this form to <u>chris.murray@arifjan.arcent.army.mil</u> or fax to +965 389-3740 / 3741.**

Page-1



# EXHIBIT B

RECEIPT COPY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PUBLIC WAREHOUSING COMPANY K.S.C.,** | § § § | |
| **v.** | § § | **CIVIL ACTION NO. 1:07cv502 (JDB)** |
| **DEFENSE SUPPLY CENTER PHILADELPHIA, THE DEFENSE LOGISTICS AGENCY, and THE DEPARTMENT OF DEFENSE.** | § § § § § | |

---

### PLAINTIFF PUBLIC WAREHOUSING COMPANY K.S.C.'S FIRST SET OF INTERROGATORIES AND DOCUMENT REQUESTS TO DEFENDANTS

---

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Plaintiff Public Warehousing Company K.S.C. ("PWC") hereby propounds to Defendants Defense Supply Center Philadelphia ("DSCP"), the Defense Logistics Agency ("DLA"), and the Department of Defense ("DoD") (collectively, the "Defendants") the following First Set of Interrogatories and Document Requests. Defendants are to answer these Interrogatories in writing and under oath, and produce the following documents at the offices of Vinson & Elkins, L.L.P., 1455 Pennsylvania Ave., Suite 600, Washington, D.C. 20004. The responses to these Interrogatories and the documents must be produced to Plaintiff no later than March 29, 2007.

### DEFINITIONS

1.     The terms "Defendants," "DSCP," "DLA," "DoD," "you," and "your" refer to the named Defendants, Defense Supply Center Philadelphia, the Defense Logistics Agency, the Department of Defense, their agents, legal representatives, divisions, agencies, affiliated entities, past and present officers, directors, employees, agents, representatives, attorneys, other personnel thereof, or anyone purporting to act on the named Defendants' behalf.

2.      The terms "PWC" and "Plaintiff" refer to Public Warehousing Company K.S.C.

3.      The term "Complaint" refers to Plaintiff's Complaint filed on March 15, 2007 in the above-referenced matter.

4.      "PV1" refers to Contract No. SPO300-03-D-3061 between DSCP and PWC.

5.      "PV Bridge" refers to Contract No. SPM300-05-D-3119 between DSCP and PWC.

6.      "PV2" refers to Contract No. SPM300-05-D-3128 between DSCP and PWC.

7.      The terms "Person" and "Persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

8.      The term "U.S. Government" or "Government" refers to the government of the United States of America; any agency, office, or military branch of the U.S. Government, including but not limited to DSCP, DLA, and DoD; and any attorneys, agents, representatives (including any auditors or investigators hired by the U.S. Government) acting or purporting to act on its behalf.

9.      "Identify" or "state the identity of" shall mean to state all dates, names of all persons with knowledge, descriptions of the knowledge of each person, and descriptions of all documents relating to your response.  In addition:

      a.      In the case of meetings or communications, to state the date of the communication or meeting, and all persons present.

      b.      In the case of invoices or payments, to state the invoice amounts, invoice dates, payment amounts, payment dates, descriptions of services performed, credits relating to the invoice or payment, and any amendments, modifications, revisions or recalculations of any invoices or payments.

c.   In the case of a person, to state the full name; home and business address and telephone numbers; employer or business affiliation; and occupation and business position held.

d.   In the case of a company, to state the name; if incorporated, the place of incorporation; the principal place of business; and the identity of the person(s) having knowledge of the matter with respect to which the company is named.

e.   In the case of a partnership, to state its principal address and the name and resident address of each general partner.

f.   In the case of a document, to state the identity of the person(s) who prepared it; the sender and all recipients; the title or a description of the general nature of the subject matter; the date of preparation; the date and manner of distribution and publication; the location of each copy; the bates-number(s) (if applicable); the identity of the present custodian; and the identity of the person(s) who can identify it.

g.   In the case of an act or event, to state a complete description of the act or event; when it occurred; where it occurred; the identity of the person(s) performing said act (or omission); the identity of all persons who have knowledge, information or belief about the act; when the act, event, or omission first became known; the circumstances; the manner in which such knowledge was first obtained; and the documents or other writings which memorialize the instance.

10.   "Describe in detail" shall mean to identify any document or communication concerning the item in question and to provide a complete, factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether first hand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the item in question.

11.   The term "including" shall mean "including, but not limited to."

12.   "Documents" as used herein shall mean every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description

3

containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

13.     The terms "relate to," "related to," relating to," and "concerning" shall mean mentioning, comprising, consisting, indicating, describing, reflecting, referring, evidencing, regarding, pertaining to, showing, discussing, connected with, memorializing or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may "relate to" or an individual or entity without specifically mentioning or discussing that individual or entity by name.

14.     The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions or other occurrences whereby thoughts, opinions, information or data are transmitted between two or more persons.

4

## INSTRUCTIONS

1.    These Interrogatories and Document Requests are continuing so as to require supplemental responses, as specified in Rule 26(e) of the Federal Rules of Civil Procedure, if the Government should, after responding to these document requests, acquire or become aware of additional documents that enlarge, diminish, or otherwise modify such responses.

2.    Please note that all answers are to be made separately and fully, and that an incomplete or evasive answer is a failure to answer. When an Interrogatory calls for an answer in more than one part, please separate the parts in your answer accordingly so that each part is clearly set out and understandable.

3.    The responses to these document requests shall include those documents and other tangible things that are within the Government's possession, custody or control, or are within the possession, custody, or control of any of the Government's employees, officers, directors, agents, trustees, officials, consultants, accountants, representatives, or investigators, or documents that are otherwise under the control of the Government. In responding to these Document Requests, Defendants are specifically asked to review the personal files, records, notes, correspondence, daily calendars, electronic mail, computer files and telephone logs or records of all such persons who have knowledge of the information to which the documents and things in each request refer.

4.    All documents produced for inspection shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this document request in accordance with Rule 34(b) of the Federal Rules of Civil Procedure.

5.    In lieu of producing original documents, Defendants may produce true, correct and complete copies of the documents requested, on the condition that Defendants make the original documents available upon request.

6.    If you object to the production of any document on the basis of attorney-client privilege, the work product doctrine, or any other asserted privilege or protection, identify each such document in a separate schedule setting forth:

    a.  the nature of the privilege claimed;

    b.  the date of the document;

    c.  the name and address of its author(s);

    d.  the name and address of all recipient(s) of the document or its contents or any part thereof or any copy;

    e.  the current locations and custodians of the document and any and all copies thereof;

    f.  a description of the document; and

    g.  the basis for each such asserted privilege.

7.    If any requested document was, but is no longer, in your possession, custody, or control, or is no longer in existence, state whether such document is or was:

    a.  missing or lost;

    b.  destroyed;

    c.  transferred to others;

    d.  otherwise disposed of; or

    e.  for any other reason no longer in your possession or control or available to you.

8.    In each such instance, also set forth the surrounding circumstances of the loss, destruction, transfer or disposition; describe in detail the authorization or basis for such disposition; state the date (or closest approximate date known to you) of such disposition; state the current location and custodian of the document and any copies thereof; and summarize the contents of such document in as much detail as possible.  If the document was destroyed or discarded pursuant to a written document retention or destruction policy, produce a copy of said policy.

9.    If you have only incomplete knowledge of the answer to an Interrogatory, please answer to the extent of your knowledge and state specifically the portion or area of the Interrogatory of which you have only incomplete knowledge, and identify the person or persons who do(es) have or might have additional knowledge or information to complete the answer.

10.    For each Interrogatory, please identify the persons from whom the information contained in the answer is obtained, the persons who swear to the truth of that information, and any documents you relied on in formulating your answer.

11.    If you object to any Interrogatory or Interrogatory subpart, or otherwise withhold responsive information because of the claim of privilege, work product, or other grounds:

    a.  identify the Interrogatory question and subpart to which objection or claim of privilege is made;

    b.  state whether the information is found in a document, oral communication, or in some other form;

    c.  identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege;

    d.  identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants; and

    e.  identify all persons having knowledge of any facts relating to your claim of privilege.

12.    If, in the course of answering any of the Interrogatories or Document Requests, you encounter any ambiguity in construing either the inquiry or a definition or instruction relevant to the inquiry, explain what you find to be ambiguous and what construction you used in providing your answer.

13.    All uses of the conjunctive in these Interrogatories and Document Requests should be interpreted as including the disjunctive and vice versa.  Words in the singular should be read to include words in the plural and vice versa.

14.    Your responses should reflect all knowledge, information, and documents in the possession, custody, or control of the Government, and includes, unless otherwise specifically indicated, its agents, legal representatives, divisions, agencies, directors, employees, agents, representatives, attorneys, other personnel thereof, or anyone purporting to act on the Defendants' behalf.

## INTERROGATORIES

1.    Identify (as defined in the instructions) each and every government agency seeking to procure goods and/or services that has asked you for past performance information and/or evaluations related to PWC, PVI, PV Bridge, or PV2 since July 2005.

2.    For each agency identified in your response to Interrogatory 1 above, identify (as defined in the instructions) the dates on which these government agencies asked you for past

## DOCUMENT REQUEST NO. 2

All documents related to Defendants' responses to the aforementioned agencies' requests for past performance information and/or evaluations related to PWC, PV1, PV Bridge, or PV2 since July 2005.

## DOCUMENT REQUEST NO. 3

All documents related to Defendants' refusal, as confirmed via electronic mail on February 28, 2007, to provide past performance information and/or evaluations related to PWC, PV1, PV Bridge, or PV2 to the foregoing agencies.

## DOCUMENT REQUEST NO. 4

All documents related to the instructions or encouragement to DSCP by any Government agency or employee to not provide a government agency seeking to procure goods and/or services with past performance information and/or evaluations related to PWC, PV1, PV Bridge, or PV2.

Respectfully submitted,

_____

Michael R. Charness
D.C. Bar No. 289322
VINSON & ELKINS, L.L.P.
The Willard Office Building
1455 Pennsylvania Ave. Suite 600
Washington, D.C. 20004
Telephone:  (202) 639-6780
Facsimile:  (202) 639-6640

## CERTIFICATE OF SERVICE

I certify that on the **22nd** day of **March, 2007** a true and correct copy of the foregoing was forwarded to the following known counsel of record by **hand delivery or First Class mail**, as follows:

*Defendants:*

Office of Counsel
Defense Supply Center Philadelphia
700 Robbins Avenue
Philadelphia, PA  19111

Department of Defense- Office of General Counsel
1600 Defense Pentagon
Washington, DC 20301-1600

Defense Logistics Agency- Office of General Counsel
8725 John J. Kingman Road
STE 1644
Fort Belvoir, VA 22060-6221

Office of Attorney General
U.S. Department of Justice
Room B-103
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Assistant United States Attorney Quan K. Luong (via hand delivery)
United States Attorneys Office for District of Columbia
501 3rd Street, NW
Washington, DC 20530

_____
Michael R. Charness

DC 660752v.1