IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC WAREHOUSING COMPANY K.S.C., | § § § | |
| v. | § | CIVIL ACTION NO. 1:07cv502 (JDB) |
| | § | |
| DEFENSE SUPPLY CENTER PHILADELPHIA, THE DEFENSE LOGISTICS AGENCY, and THE DEPARTMENT OF DEFENSE. | § § § § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

For its First Amended Complaint against Defense Supply Center Philadelphia ("DSCP"), the Defense Logistics Agency, and the U.S. Department of Defense ("DoD") (collectively, "Defendants"), Public Warehousing Company K.S.C. ("PWC" or "Plaintiff") alleges as follows:

**NATURE OF THE ACTION**

1.  Plaintiff PWC is a United States Government contractor and a Subsistence Prime Vendor for DSCP. Indeed, DSCP is the agency with which PWC has its largest and most lucrative contracts.

2.  PWC and DSCP have entered into three Prime Vendor contracts pursuant to which PWC provides food to the dining facilities of the U.S. Military in the Middle East. In 2003, PWC and DSCP executed Contract No. SPO300-03-D-3061 ("PV1"), which carried an estimated value of $1.4 billion. Subsequently, the parties entered into Contract Nos. SPM300-05-D-3119 ("PV Bridge"), with an estimated value of $1.5 billion, and SPM300-05-D-3128

("PV2"), with an estimated value of $14 billion, in 2005.

3.  PV1 and PV Bridge both incorporated by reference Solicitation No. SPO300-02-R-4003 (the "PV1 Solicitation"). PV2 incorporated by reference Solicitation No. SPM300-04-R-0323 (the "PV2 Solicitation"). Both Solicitations include a clause entitled "REBATES/DISCOUNTS." This clause requires PWC to return to DSCP rebates and discounts "directly attributable to sales resulting from orders exclusively submitted by DSCP or its customers."

4.  All three Contracts have the same pricing structure. PWC charges DSCP a "Unit Price" for each item purchased. The Unit Price is the sum of the "Delivered Price" and the "Distribution Price." The Delivered Price is defined in the Contracts and Solicitations as "the manufacturer/supplier's actual invoice price (in U.S. currency) to deliver product to the Prime Vendor's . . . distribution point." The Distribution Price is a fixed amount reflecting PWC's additional costs, plus profit.

5.  PWC's PV1 Price Proposal submitted on or about August 14, 2002 included the following statement: "Delivered Price is not reduced by cash discounts for prompt payment available to PWC or its supplier." In addition, PWC did not list prompt payment discounts among the types of rebates and allowances it promised to pass on to DSCP. At no point did DSCP object to these elements of PWC's Proposal.

6.  During the PV2 Solicitation process, DSCP provided the opportunity for potential offerors to ask questions about the PV2 Solicitation. These questions and answers were published in PV2 Solicitation Amendment No. 0002, which was incorporated by reference into the PV2 Contract. One potential offeror requested "more clarity" as to the REBATES/DISCOUNTS clause. DSCP replied: "Based on the volume of product a PV

2

purchases from a manufacturer, the manufacturer will offer rebates and discounts to the PV. These rebates and discounts must be passed on to DSCP and their customers." At no point did DSCP mention prompt payment discounts in its discussion of the REBATES/DISCOUNTS clause.

7.  PWC's PV2 Price Proposal submitted on or about November 16, 2004 included the following statement: "Delivered Price is not reduced by cash discounts for prompt payment available to PWC or its supplier." In addition, PWC did not list prompt payment discounts among the types of rebates and allowances it promised to pass on to DSCP. At no point did DSCP object to these elements of the Proposal. This Proposal was incorporated by reference into the PV2 Contract.

8.  On October 24, 2006, PV2 Contracting Officer Timothy Dlugokecki asked PWC, via e-mail, how it tracks prompt payment discounts. On October 26, 2006, Mr. Dlugokecki rescinded his question. He wrote:

> I was informed the following:
>
> Discounts or rebates by the prime vendor from its suppliers as a result of a prompt or early payment made by the prime vendor to such suppliers are not required to be passed to DSCP or its customers.

9.  Given the different fonts, it was evident that the portion of his response following the colon had been cut and pasted from another document.

10. Recent solicitations for Prime Vendor Support issued by the DSCP Directorate of Subsistence include a revised version of the REBATES/DISCOUNTS clause. While this version and the version appearing in the PV1 and PV2 Solicitations are substantially similar, the new version includes the following text, appearing at part E:

>As described in this section, the terms "rebates" and "discounts" do not include any discounts or rebates by the Prime Vendor due to early or prompt payments to its suppliers. Discounts or rebates by the prime vendor from its suppliers as a result of a prompt or early payment made by the prime vendor to such suppliers are not required to be passed to DSCP or its customers.

11. The Department of Justice ("DOJ"), acting through the U.S. Attorney's Office (the "AUSA") in Atlanta, GA, recently commenced an investigation into whether these prompt or early payment rebates were improperly withheld from DSCP. Consequently, in January 2007, the Department of Defense Inspector General issued PWC a subpoena, requesting documents related almost exclusively to PWC's negotiation with and receipt of discounts from its manufacturers and suppliers for early payment of their invoices. PWC denies any wrongdoing with respect to these early payment rebates as the evidence clearly demonstrates that both DSCP and PWC agreed that prompt payment rebates were never to be passed onto DSCP.

12. The DOJ is also investigating PWC's relationship with a preferred supplier to the DSCP contract, The Sultan Center ("TSC"). TSC is a Kuwaiti company that provides many local market items to PWC under the Prime Vendor contracts. The investigators appear to be interested in whether PWC and TSC are affiliated companies, and if so, whether this should have affected the prices charged by TSC for its products. Because TSC is neither a parent nor a subsidiary of PWC, and the parties work at arms length in their subcontract activities, PWC is confident that it will demonstrate that the DOJ's allegation is without merit.

13. As part of their evaluation of contractor proposals for government contracts, the government agencies are required by the Federal Acquisition Regulation (the "FAR"), 48 C.F.R. § 15.304(c)(3), to consider and evaluate prospective offerors' past performance. Indeed, past performance is often the most important factor that an agency considers in deciding which

contractor should receive an award because it is an "indicator of an offeror's ability to perform the contract successfully." 48 C.F.R. § 15.305(a)(2)(i).

14. Because of the importance of past performance information in assisting a procurement agency's award decision, the FAR makes it mandatory for agencies to "prepare an evaluation of contractor performance for each contract that exceeds the simplified acquisition threshold at the time the work under the contract is completed." *See* 48 C.F.R. § 42.1502(a). In addition, the FAR states that "interim evaluations should be prepared as specified by the agencies to provide current information for source selection purposes, for contracts with a period of performance, including options, exceeding one year." *Id.* Finally, the FAR states "[d]epartments and agencies *shall* share past performance information with other departments and agencies when requested to support future award decisions." 48 C.F.R. § 42.1503(c) (emphasis added).

15. Irrespective of the fact that the DOJ has only recently commenced its investigation and has not charged PWC with any wrongdoing, DSCP has refused to provide any procurement agency with past performance information on *any* of the Prime Vendor contracts, including those that have been completed. DSCP's sole rationale for refusing to provide such information is the pendency of the investigation. DSCP's refusal violates the FAR, 48 C.F.R. § 42.1503(c).

16. On April 13, 2007, approximately one month after PWC filed its Original Complaint, DSCP completed its FAR-mandated evaluation of PV Bridge and attached it as an exhibit to DSCP's Supplement to its Motion to Dismiss, in violation of FAR § 42.1503(b). On motion by PWC, this evaluation (Contractor Performance Assessment Reporting System evaluation or "CPARS evaluation") was removed from the record and sealed because it

constitutes sensitive source selection information that should not be made available to the public.

17. PWC received grades of "very good" (purple) or "excellent," (dark blue) with only one grade of "satisfactory" (green) in the performance-related categories to be addressed in the CPARS evaluation, for its efforts on the PV Bridge contract. Additionally, DSCP stated in its narratives that "PWC's performance results were high fill rates contributing to high customer satisfaction, few customer complaints and on-time delivery no matter how harsh conditions might be."

18. Despite these favorable marks and despite the fact that CPARS evaluations, under FAR § 42.1501, are supposed to be based on objective, performance-related data, DSCP inappropriately referenced the DOJ investigation in the CPARS evaluation. Such a reference by DSCP was entirely inappropriate, unjustified, and extremely harmful to PWC. The CPAR evaluation is supposed to be an analysis of the contractor's _performance_ of a given contract, and not an opportunity to disseminate unproven allegations asserted by a third party. DSCP concluded the CPARS evaluation with the following statement: as a contracting agency, it "might or might not award to [PWC] today given that [DSCP] had a choice."

19. Because past performance information is so heavily weighted in a procurement agency's award decision, DSCP's refusal to provide such information on PWC's largest contract, representing about 90% of PWC's government business, has and will continue to have a significant and negative impact on PWC's ability to win government contracts. DSCP's refusal will irreparably harm PWC by significantly reducing, if not eliminating entirely, PWC's government business due to the absence of new contract awards. The government's investigation could go on for years, effectively meaning that PWC will not receive any past performance reviews for an indefinite and prolonged period of time.

20. PWC seeks appropriate judicial review of DSCP's actions. PWC asserts that DSCP's refusal to provide past performance information is an abuse of discretion and a violation of the FAR. The FAR requires DSCP to (a) provide such past performance evaluations on completed contracts such as PV1 and PV Bridge, (b) base such evaluations on objective, performance-related observations and data, (c) exercise some independent discretion on issuing a past performance review on PV2, and (d) share past performance information on all three contracts under any circumstances.

21. PWC further asserts that the tremendous impact on its business resulting from (a) DSCP's continued refusal to provide past performance information on its largest contracts, and (b) any references made by DSCP to the DOJ investigation in past performance reviews or evaluations would be an unconstitutional deprivation of property without due process of law because PWC has a protected property interest in operating a business, and DSCP's continued refusal and its inappropriate reference to the DOJ investigation will result in a constructive debarment of PWC from the government contracting industry.

22. PWC would not have an adequate remedy at law if DSCP continues to refuse to provide such past performance information and continues to inappropriately reference the DOJ investigation in its evaluations, thereby constituting a violation of the FAR and a deprivation of property. Therefore, PWC is entitled to declaratory judgment and injunctive relief requiring that DSCP provide the information required pursuant to federal law and regulation.

## PARTIES

23. PWC is a Kuwaiti corporation with U.S. subsidiaries. Its principal place of business is in Sulaibiya, Kuwait.

24. DSCP is a branch of the Defense Logistics Agency ("DLA"), which is a division

of the U.S. Department of Defense. DSCP is primarily responsible for purchasing subsistence, textile products and medical items for the DoD. DSCP contracted with PWC as a Subsistence Prime Vendor.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

26. This Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, as there is an actual case or controversy between the parties.

27. This Court has jurisdiction pursuant to 28 U.S.C. § 1361 as Plaintiff's request for a mandatory injunction is, in effect, a request for a writ of mandamus.

28. Venue is proper under 28 U.S.C. § 1391(e), as a U.S. government agency is the named defendant.

## GOVERNING STATUTORY PROVISIONS

29. The Federal Acquisition Regulation (the "FAR"), 48 C.F.R. § 42.1503(c), requires that U.S. government departments and agencies share past performance information with other departments and agencies when requested to support future award decisions. The FAR has "the force and effect of law," as it was issued under statutory authority and published in accordance with statutory procedures. *Davies Precision Machining, Inc. v. United States*, 35 Fed. Cl. 651, 657 (1996).

30. The Administrative Procedure Act (the "APA"), 5 U.S.C. § 702 authorizes (1) judicial review of an agency action, and (2) the award of injunctive relief to a plaintiff injured by said agency action.

## CAUSES OF ACTION

## COUNT I

### (Violation of the Federal Acquisition Regulation, 48 C.F.R. §§ 42.1502-.1503)[1]

31. PWC incorporates herein the allegations in paragraphs 1 through 19 of this Complaint.

32. Under FAR § 42.1502(a), U.S. government departments and agencies, such as DSCP, are required to complete past performance evaluations of contractors which have completed government contracts with other departments and agencies, when requested to evaluate and support future contract awards. Under FAR § 42.1502(a), agencies should prepare interim evaluations for those contracts with period of performance exceeding one year, including options, in order to provide current information for source selection purposes. Finally, under FAR § 42.1503(c), agencies are required to share past performance information with agencies evaluating contractors for contract awards.

33. DSCP's refusal to provide past performance evaluations, specifically for PV Bridge, a completed contract, is in violation of FAR § 42.1502(a).

34. DSCP's refusal to provide interim evaluations of PV2, an ongoing contract, evaluations that are encouraged by FAR § 42.1502(a), violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) as such refusal on the sole and unreasoned basis that there is an ongoing investigation is arbitrary, capricious, and an abuse of discretion.

---

[1] While PWC provides detailed information on its federal government contracts, this action is not a contract action. PWC is not seeking to enforce any contractual obligation; rather, PWC is seeking to require DSCP to provide the past performance evaluations mandated by the FAR. In determining whether a claim "sounds in contract," the U.S. Court of Appeals for the District of Columbia Circuit will consider the (a) source of the rights upon which the claims are based and (b) the type of relief sought. *Albrecht v. Committee on Employee Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). The Circuit has rejected the view that "any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act." *Megapulse*, 672 F.2d at 967-68.

9

35. DSCP's refusal to share past performance information with respect to any of its contracts with PWC with requesting procurement agencies violates FAR § 42.1503(c).

36. Linda L. Ford, the Contracting Officer for DSCP, and her successors in office, are personally responsible for DSCP's compliance with FAR §§ 42.1502(a) and .1503(c) and 5 U.S.C. § 706(2)(A).

37. DSCP's refusal to provide such past performance evaluations and information on behalf of PWC to other agencies has caused and will continue to cause irreparable harm to PWC's business, i.e., its ability to be awarded government contracts. Such irreparable, indirect harm would constitute a *de facto* or constructive debarment of PWC.

38. DSCP's inappropriate reference to the DOJ investigation in its CPARS evaluation of the PV Bridge contract will cause irreparable harm to PWC's business, i.e., its ability to be fairly considered for and awarded government contracts. The reference to this investigation – an investigation in which no criminal or civil charges have been filed – unjustifiably stigmatizes PWC, resulting in a constructive debarment of PWC and preventing them from realistically being able to compete for future government contracts.

## COUNT II

### (Violation of Constitutional Due Process Rights Under the Fifth Amendment)

39. PWC incorporates herein the allegations in paragraphs 1 through 19 of this Complaint.

40. DSCP's refusal to provide contracting officers with past performance evaluations and information related to PWC constitutes a constructive debarment of PWC from the government contracting industry. Without an opportunity for PWC to challenge DSCP's refusal before this Court, such a refusal by DSCP deprives PWC of its property without due process of

law in violation of the Fifth Amendment of the United States Constitution.

41.  By referencing the DOJ's investigation in its CPARS evaluation of the PV Bridge contract, DSCP has stripped PWC of its due process rights under the 5th Amendment. While no charges have been filed based on these unsubstantiated allegations, DSCP's inappropriate and unjustified reference to this investigation effectively tries PWC without an opportunity to be heard. This investigation has no relation to PWC's performance of its contracts with DSCP, and any reference to this investigation has no place in a performance-based evaluation such as a CPAR.

## **REQUEST FOR RELIEF**

WHEREFORE, PWC respectfully requests this Court:

a.  for a declaratory judgment order stating that

   1.  DSCP's refusal to provide past performance information and evaluations related to PWC to requesting procurement agencies constitutes a violation of the FAR, a federal regulation;

   2.  Such a violation of the FAR leaves PWC with no adequate or available remedy at law;

   3.  PWC has a constitutionally protected property right to operate its business;

   4.  DSCP's refusal would constitute a constructive debarment of PWC, meaning that PWC would be deprived of its property right to operate its business if DSCP continues to refuse to provide other agencies with past performance evaluations and information related to PWC;

   5.  DSCP's reference to the Department of Justice investigation constitutes a constructive debarment of PWC because it unjustifiably stigmatizes PWC

and tries PWC without a hearing, and this action will severely impact PWC's ability to compete for and be awarded government contracts, resulting in a deprivation of its property right to operate its business;

    6.    Under the Fifth Amendment of the United States Constitution, PWC is entitled to due process before it can be deprived of its property right to operate its business;

b. for an order

    1.    requiring DSCP to provide other procurement agencies with past performance evaluations and information related to PWC;

    2.    enjoining DSCP from referencing the Department of Justice investigation in (1) future CPAR evaluations, and (2) the provision of past performance information to agencies requesting such information;

    3.    requiring an expedited hearing to be held in which DSCP must demonstrate to this Court that its refusal does not unfairly and improperly deprive PWC of its property rights; this expedited hearing shall permit PWC to fully participate and offer arguments in opposition to DSCP's refusal to provide other agencies with past performance evaluations and information related to PWC;

c. for an award of attorney fees and costs, and

d. for such other relief as the Court may deem appropriate.

DATED: April 18, 2007

Respectfully submitted,


/s/ Michael R. Charness
Michael R. Charness
D.C. Bar No. 289322
VINSON & ELKINS, L.L.P.
The Willard Office Building
1455 Pennsylvania Ave. Suite 600
Washington, D.C. 20004
Telephone: (202) 639-6780
Facsimile: (202) 639-6640


ATTORNEYS FOR PUBLIC WAREHOUSING
COMPANY K.S.C.


DC 667473v.1